# Cook, Adm'r, v. The Central Railroad and Banking Company of Georgia, and the Georgia Railroad and Banking Company.

*Action to Recover Damages for Injuries, Resulting in Death of Person Walking on Railroad.*

1. *Contributory negligence ; defense of vitiated when injury inflicted intentionally.*—When contributory negligence is relied on, as a defense to an action to recover damages for personal injuries, if it be shown that they were inflicted recklessly, wantonly, or intentionally, such defense is vitiated and overcome.

2. *Cases approved.*—The cases of *Tanner v. L. & N. R. R. Co.*, 60 Ala. 621, and *Gothard v. The Alabama Great Southern R. R. Co.*, 67 Ala. 114, are approved on this point.

3. *Contributory negligence ; when defense of vitiated, although injury not inflicted intentionally.*—When, in an action to recover damages for personal injuries, the defense of contributory negligence is relied on, the defendant is liable, although the plaintiff's negligence essentially co-operated to produce the injury, when it could have been averted by the exercise of reasonable care and prudence on the part of the defendant, or his servants, after discovering the danger in which the party injured stood.

4. *Case qualified or supplemented*—The third head note in the case of *Gov't Street R. R. Co. v. Hanlon*, 53 Ala. 70, is qualified or supplemented by the doctrine settled in the cases cited above.

5. *Comparative negligence; doctrine of, does not prevail in this State.*—The doctrine of "comparative negligence" does not prevail in this State ; and charges based on it are properly refused.

6. *Contributory negligence ; when not invoked against person in danger.*—Contributory negligence is not charged upon one who suddenly acts wildly when peril comes upon him unwarned, and in the absence of any evidence throwing light on the matter, he will be presumed to have used that care and precaution which the law requires, and to which instinct would prompt him in saving his life.

7. *Negligence of person walking on railway, in avoiding danger, must be submitted to the jury.*—When a person, walking over a long trestle on a railway, let himself down under the ties to avoid being run over by an approaching train, but being unable to get upon the track again, fell and was killed, a charge which submitted to the jury the question of his negligence in attempting to cross the trestle, but which ignored the question of due caution in regaining his position, on which there was evidence, was misleading and properly refused.

8. *Engineer ; duty of, as to stopping trains on discovering persons on railway track.*—Ordinarily, persons who walk on railway tracks are trespassers, and the

engineer is not bound to stop or check his train on discovering a person on the track, at a place where he can readily get off and escape from danger, but where the trespasser does not appear to be apprised of the impending danger, or, from any cause, is unable to leave the track, the rule is otherwise.

9. *Care; degree of required from railroad companies.*—The law demands of railroad companies, and their servants, only that degree of diligence which very careful and prudent persons take of their own affairs ; infallibility is not required or expected.

10. *"Regular depot or stopping place;" what is not within the meaning of the statute, (Code,* § 1699).—A place, not on a public road where a railroad company was in the habit of stopping its trains, for the sole purpose of taking on or putting off passengers, who had notified those in charge of the trains to do so, and when such trains would also stop at other places for this purpose, is not a "regular depot or crossing," within the meaning of the statute (Code, § 1699), requiring the bell to be rung or the whistle blown within a quarter of a mile of such depot or crossing.

11. *Erroneous charge, to which neither party objects, should be refused.*—Courts must pronounce their own rulings, being guided alone by a sense of judicial duty, and when a written charge is requested by either party, which is erroneous, it should not be given, although the adversary party "withdraws all objection to it."

APPEAL from the City Court of Montgomery.

Heard before the Hon. JOHN A. MINNIS.

This was an action brought by James W. Cook, as administrator of the estate of Jacob Gunter, deceased, against the Central Railroad and Banking Company of Georgia and the Georgia Railroad and Banking Company, to recover damages for injuries inflicted on said Jacob Gunter, from which he died. On the trial the plaintiff proved that on April 1, 1878, Jacob Gunter, a weak and feeble old man, was walking along, and across, a trestle on defendants' railroad. This trestle was some fifteen feet in height, and seven hundred feet long, and was connected with the bridge over Pintlala Creek, which was about one hundred and fifty feet long, and just before said Gunter reached the end of the trestle a train came upon it, and in order to escape being run over by the cars, he let himself down between the ties and hung down by his hands until the train passed over him. He then tried to draw himself up again on the track, but could not do so, and fell to the ground, receiving injuries which caused his death. The engineer did not blow the whistle or ring the bell until just as the train passed over the place where the deceased was hanging, although the train had approached the trestle on a track which was a straight line for a half mile before reaching it, and although the said Gunter could easily have been seen by a person at any point on said straight line. The engineer, Blackmon, testified for the defendants, that a heavy down grade commenced at the point where the straight line began and continued to the bridge ; that when the engine reached this straight line he shut off steam, and when he was about three thousand feet from the bridge and run-

ning down grade he discovered a man on the trestle; that he thought the man was so close to the embankment that he would get off before the train reached him; that he did not blow the whistle or ring the bell, nor try to stop the train; that when he came within two or three hundred feet of the bridge he "blew for brakes," and reversed his engine, but the velocity of the train was so great that although he used all the means in his power to stop it he was unable to do so until he reached the spot where Gunter was hanging, but to give him a chance to get back on the track as soon as possible, he "blew off brakes" and ran on to the next station. At the point where the straight line, spoken of above, commences, there was a crossing known as Cantelo's Crossing; that it was the habit to stop at this crossing for the purpose of taking on or putting off any passenger who might want to get on or off there, and the person in charge of the trains would stop at other places for the same purpose, and trains only stopped at the crossing when a passenger wished to get on or off; the witness also said that he did not blow the whistle within a quarter of a mile before reaching the crossing, but he did blow it when he got to the crossing. The conductor of the train, Lucas, testified that he had often seen men hang down on this trestle while the train passed over them, and then get back on the track and laugh at those on the train; that he heard the signal for brakes some three or four hundred yards before they reached the bridge. The court was requested by the plaintiff to give the following written charge: "If the jury believe, from the evidence, that defendant's agents, in charge of said train, did see, or by the exercise of proper care, could have seen, plaintiff's intestate upon said bridge or trestle in time to have stopped said train before it reached him, and that they failed to stop said train, and that their failure to stop said train necessitated his swinging down from the timbers to prevent being run over, and that his death occurred from injuries received in falling from said timbers, in his attempt to get up, after the train had passed, then the defendants are liable in the same degree and to the same extent as if the train had actually struck him and knocked him off." This charge the court refused to give, and the plaintiff excepted. The court then gave the charges marked, 1, 2, 3, 7, X, and Z, at the request of the defendants. The plaintiff separately excepted to the giving of each of these charges, which were as follows: 1. If the jury believe, from the evidence, that the plaintiff's intestate was without direct or implied license of defendants, walking along the railroad track of defendants, and while so walking along the railroad of defendants was killed by reason of the running of

the cars of defendants on said track, that then the administrator of plaintiff can not recover for such death, unless the conduct of those in charge of the cars, after his presence on the track was observed, or could, with due and proper diligence, have been discovered, evinced wanton, reckless, or intentional mischief to plaintiff's intestate, or was lacking in that prudence which the most prudent men use in their own affairs. 2. That when one is observed by an engineer to be on the track of a railroad on which a train is running, the engineer is justified in supposing that he will use ordinary prudence in getting out of the way of the train, and there is no duty imposed on him, either in law or humanity, to check or stop the train, unless the circumstances show that the man is either unaware of his danger or is not in a situation to escape it. 3. That if the plaintiff's intestate was in fault in being on the track of defendants' road, and such fault contributed proximately to the death of plaintiff's intestate, that then the defendants can not be made liable for his death, unless the conduct of its agents, or servants, contributing proximately to his death, was after they observed, or could, with due care, have seen that he was on the track, reckless, wanton, or intentional. 7. The prudence which the most prudent men use in their own affairs is all that can be required of those in charge of trains of railroads; they are not required to be infallible. "Z." If the defendants were in the habit of taking up and putting off passengers at any point where it could conveniently be done, and was in the habit of stopping at a certain place when notified beforehand that some one wanted to get on or off there, and not otherwise; that then such place is not a "regular stopping place," in the terms of the statute read to you (Code, § 1699). "X." There is no duty to stop or check a train in motion because a man is on the track, unless the one in charge of the train sees, or could see, that he was in danger, and the duty of checking or stopping the train only arises when the danger is apparent. If, with proper vigilance, it appeared to the engineer, and if the engineer was prudent and skillful, that the plaintiff's intestate was at a place where he could readily get off, then the duty of checking or stopping the train only arose when the danger became apparent. The defendants then requested the court to give the following written charge, viz: "If the jury believe, from the evidence, that plaintiff's intestate was on defendants' said railroad track, without permission of defendants, and that when he was seen to be on the track, by defendants' agents, or could, with due care, have been seen, there was nothing wanton, reckless, or intentional on the part of defendants' agents, or servants, in the running or manage-

ment of the train, that then the defendants are not liable for his death." This charge the court refused to give, whereupon the plaintiff announced to the court that he withdrew all objection to it, but the court refused to give it, and plaintiff excepted. The plaintiff then requested the court to give said charge, which had been first requested by the defendants, but the court again refused to give it, and the plaintiff again excepted. There was a verdict for the defendant. The giving, and the refusal to give, the charges, as stated above, are the errors assigned.

EDWIN F. JONES, for appellant.—The court erred in refusing to give the charge requested by the plaintiff, for it conformed with the principles laid down in *Tanner, Ex'r, v. L. & N. R. R. Co.*, 60 Ala. 621. That case holds that the duty to stop a train, when perceiving a person on the track, is lifted from the employees of the company only when the person seen on the track is an adult, and shows by his actions that he is aware of its approach and is using the proper efforts to get out of its way ; that if the person seen on the track was on a high embankment, or in a deep cut, it is the duty of the engineer to *promptly* use all means in his power to stop. In this case, the person killed was in just such a place. No attempt to stop the train was made until long after he was discovered on the track. The engineer saw the deceased, but thought he would get off before the train reached him, or, in other words, "took the chances" of killing him. If the person is in such a place as to render it "*doubtful*" whether he could get beyond it before the train would overtake him, the train officers being presumed to know the topography of the road, should at once take measures to avoid the danger." *Tanner v. L. & N. R. R. Co., supra.* Yet the court charged the jury that although the defendants' agents may have been guilty of negligence, such as forced the plaintiff's intestate to make the attempt to hang down from the bridge, to escape certain death, the railroad company is absolved from liability for his death, which resulted therefrom. The charges withdrew from the jury the question whether hanging down from the bridge was a prudent act, under all the circumstances surrounding the deceased when he made the attempt. The case of *Tanner v. L. & N. R. R. Co., supra,* has been approved in *Sullivan v. S. & N. R. R.*, 59 Ala. 272 ; *Shearer v. Savannah & Memphis R. R.*, 58 Ala. 672. Charge No. 3, given at the request of the defendants, is erroneous, for it relieves the company from liability if the conduct of its servants was not *reckless, wanton* or *intentional.* It may have been wanting in that high degree of skill and carefulness which the law re-

quires of railroad employees, but this, according to the charge, would make no difference. The engineer might be careless, or incompetent, but if his conduct was not *wanton, reckless* or *intentional*, the company is not liable. Such is not the rule, for a lack of prudence is as fatal to the defense of contributory negligence as such wanton, reckless or intentional misconduct. The 2nd charge was erroneous, for it allowed the engineer to judge whether the deceased could have gotten off the track, while the law is, that if it was *doubtful*, the duty to stop the train immediately arose. The deceased, from the time the engineer first discovered him, was at a place where he could not get off. A station at which any one could get on or off the train, such as was the stopping place mentioned in this case, comes within the statute (Code, § 1699), which requires the engineer to "blow the whistle, at least one-fourth of a mile before reaching any public road crossing, or any regular depot, or stopping place on such road." The question as to whether a party has the right to waive objections to a charge requested by his adversary, and to have the same given, is submitted to the court without argument. I have found no adjudication on this subject.

HENRY C. SEMPLE, for appellees.—The charge refused to plaintiff was properly refused. It withdrew from the jury all consideration of the facts constituting and involving the question as to whether the duty of stopping the train had arisen. *Non constat*, but that in the situation in which the engineer stood it was apparent to him that deceased was in a situation from which he could, without danger, get off the trestle. Looking through the bridge, or over it, as he descended, he seemed to be near the end of the trestle. He could see and hear the approaching train. Men frequently trespassed on the road by getting on the trestle and walking over it, and when the train approached hung down under it in jest and fun, and laughed as the train passed over them. The engineer could not be reproached for not discovering that he was old and feeble, at the distance of several hundred yards. It assumed negligence from a part of the facts, when others were in evidence tending to contradict the idea, not noticed by the charge, and was properly refused. Charges one and two, given for defendants, comply exactly with the rule of duty laid down by the court in *Tanner, Executor, v. L. & N. A. R. R. Co.*, 60 Ala. 621. And charge three is the same when we consider that *reckless* is the reverse merely of *lawful*, and that the sense of the charge is the same as if it had used the words, "wanting in due and proper care." The charge "Z." was fully sustained by the evidence noticed therein. The

words of the statute are, "public road crossing, or *regular* depot, or stopping place on railroad." It is not contended that there was any evidence to show it was a "public road crossing," but it is insisted that because the engineer could stop at that place to take up or put off passengers, whenever *notified* that any one wanted to get on or off there, that this constituted it a "*regular* stopping place." This necessarily blots out the word "regular," which involves the idea of a rule to stop without notice, and makes a *rule* of an *exception*. As to the error of refusal to give a charge which defendants had asked, and to which plaintiff withdrew all objection, it is manifest that if error, it is one of which defendant alone can complain.

SOMERVILLE, J.—In *Tanner's Ex'r v. The Louisville & Nashville R. R. Co.* 60 Ala. 621, and *Gothard v. The Alabama Great Southern R. R. Co.* 67 Ala. 114, this court has stated the doctrine of contributory negligence applicable to injuries to the person, produced by the want of proper care on the part of the servants and agents of railroad companies. Without reiterating in detail the principles there enunciated, we are satisfied to re-affirm them so far as they are germane to the points arising and necessary to be considered in this case.

In the former case, the principle, as stated by STONE, J., is indisputably correct, that when an injury is perpetrated by a defendant either wantonly, recklessly, or intentionally, the defense of plaintiff's contributory negligence is thereby overcome and vitiated. But we do not consider that such misconduct on the part of a defendant is necessary in order to establish his liability for such injury, even where the negligence of the plaintiff has essentially co-operated to produce the damage which is the *gravamen* of the action. The third head note in the case of the *Govt. St. R. R. Co. v. Hanlon,* 53 Ala. 70, must be considered as qualified or supplemented by the doctrine settled in the above cases, which makes the liability of the defendant, in such cases, turn upon the question as to whether or not the servants or agents of the company could, by the exercise of reasonable care and prudence, have averted the injury.

Tested by these principles, charge numbered three, given by the Circuit Court on request of the appellee, was erroneous. The doctrine announced in *Railroad v. Hetherington,* 83 Ill. 510, and other similar adjudications in that State, upon which these charges seem to have been based, does not prevail under the decisions of this court. The principle of comparative negligence, from which it originates, has been discarded by these decisions.

It is a most difficult and perplexing question as to what consequences of a negligent act, a wrong-doer can be held responsible for in damages.   It was well pronounced by Shaw, C. J., in *Marble v. Worcester*, 4 Gray, 395, 387, to be frequently, in its relation to the whole docrtine of causation, a matter of "profound difficulty, even if it may not be said of mystery." It is obvious, however, that the injury must not be too remote, as being the result of secondary causes.   And the damage sustained must flow naturally, legally and with sufficient directions from the alleged injury.   The reason given by Lord Bacon is : "It were infinite for the law to consider the causes of causes, and their impulsions one of another ; therefore, it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any further degree."—Bac. Maxims, Reg. 1.

It is insisted by appellant, that if by the negligent failure of defendant to stop the train before it reached deceased on the trestle upon which he was walking, he was compelled to swing down by his arms from the timbers in order to escape danger, and, in his attempt to recover his position after the train passed over him, he fell to the ground and thereby sustained injuries terminating in his loss of life, the defendant would be liable to the same extent as if he had been killed by direct collision with the engine or train.   The evidence shows that the deceased had, as stated in the bill of exceptions, "let himself down between the ties (on the trestle), and endeavored to hang down by his hands until the train should pass over him ; that the said train did pass over him and he was unable to draw himself up on said bridge, and fell to the ground, a distance of about fifteen feet, and died in two or three days thereafter from the effects of injuries sustained by the fall."   The charge requested to be given at the instance of appellant, and refused by the court, ignored the question of due care on the part of deceased in swinging down from the bridge and regaining his position after the train passed over the trestle or bridge, beneath which he had taken refuge.

It is true that a person, under such perilous circumstance, will be presumed, in the absence of any evidence throwing light upon the matter, to have observed that care and precaution which the law requires, as instinct would prompt him to due diligence in saving his life.—*Railroad Co. v. Weber*, 76 Penn. St. 157, (18 Amer. Rep. 407).   And we may say, as a general rule, too, that " a person is not chargeable with contributory negligence, who, when unwarned peril comes on him suddenly, acts wildly and madly.   For persons in great peril are not required to exercise all the presence of mind and care of a prudent, careful man ; the law makes allowances for

them, and leaves the circumstances of their conduct to the jury."—Wharton Law Neg. § 304; *Buell v. Railroad Co.* 31 N. Y. 314; *Railroad Co. v. Yarwood,* 17 Ill. 509. The question of decedent's negligence in undertaking to cross so long a trestle, when his means of escape was so hazardous, was properly submitted to the jury. And so likewise ought the question of his exercising due caution in attempting to recover his position, upon which there was evidence tending to throw some light. This was withdrawn from their consideration by the charge in question. It was, for this reason, misleading, and its refusal was not error—*Railroad Co. v. Hetherington,* 83 Ill. 510; *Thrash v. Bennett,* 57 Ala. 156; *Hammil v. Brown,* 60 Ala. 499.

The safety of the traveling public demands that the right of way of a railroad company should be unobstructed, and persons ordinarily who walk along or upon such ways are trespassers. In *Railroad Co. v. Godfrey,* 71 Ill. 500, the court said: "The right of way was the exclusive property of the company, upon which no unauthorized person had a right to be, for any purpose. The plaintiff was traveling upon defendant's right of way, not for any purpose of business connected with the railroad, but for his own convenience as a footway in reaching his home. . . There was nothing to exempt him from the character of a wrongdoer and trespasser in so doing, further than the supposed implied assent of the company, arising from their non-interference with a previous like practice by other individuals." The engineer is under no duty to stop or check his train when one is observed on the track of the road, where he can step readily aside, or otherwise reasonably escape from danger. "If he were required to check the train at every such occurrence, it would become an intolerable grievance."—1 Redf. on Railways, § 133, *note.* But the duty is otherwise where the trespasser does not appear to be apprised of the impending danger, or, from any cause, is unable to leave the track.—*Tanner v. Railroad Co.* 60 Ala. 621, 640.

There was no error in giving charge numbered one and two as requested by defendant, as it harmonized with these principles. The seventh charge was obviously correct, under the uniform rulings of this court in all cases where the point presented has been raised. The law exacts of railroad companies, and their servant, only that degree of diligence which very careful and prudent persons take of their own affairs. Infallibility is neither expected, nor required.—*Gothard v. Alabama Great So. R. R. Co.* 67 Ala. 114.

Section 1699 of the Code, (1876) requires engineers or other persons having the control of railroad locomotives or

[Cromelin v. McCauley et al.]

trains "to blow the whistle or ring the bell, at least one-fourth of a mile before reaching any public crossing, or any regular depot or stopping place on such road," and to so continue until such destination is reached or passed. The evidence shows that Cantelo's Crossing was not a public road, and that it was the habit of the company to stop at this point only for the purpose of taking on or putting off any passenger who so desired, and that those in charge of trains would stop at other places for the same purpose. This was not a "*regular* depot or stopping place," within the contemplation of the statute.

When a defendant or plaintiff requests a charge in writing and it is refused by the court, it avails nothing for the opposite party to "withdraw all objections" to it. The court must pronounce its own rulings, being guided alone by a sense of judicial duty, which regards the correctness or incorrectness of the legal proposition submitted, as gauged by the law. No charge should be given which is erroneous, though favored by both litigants, or their counsel. The plaintiff, however, had a right to request this rejected charge in the same manner that he could any other one which was in writing, as required by the statute. The charge numbered four in the record, concerning which these proceedings were had, was incorrect under the principles above discussed, and was properly refused.

The judgment of the Circuit Court is reversed, and the cause is remanded.