# East Tenn., Va. & Ga. Railroad Co. *v.* Bayliss.

*Action against Railroad Company, for Injuries to Stock.*

1. *Burden of proof as to negligence.*—In an action against a railroad company, to recover damages for injuries to stock, when the fact of injury by the defendant or its servants has been shown, a *prima facie* case is made out for the plaintiff, and the *onus* is then cast on the defendant "to acquit itself of negligence, or to show a compliance with the statute;" that is, if the injury occured at one of the places specified in the statute, and under the circumstances therein detailed, a compliance with the requisitions of the statute must be shown; and if under other circumstances, the evidence must be sufficient to satisfy the jury that it occurred without such negligence as, under the general law governing the doctrine of negligence, would render the defendant liable.

2. *Same; legislative adoption of judicial construction of statute.*—This doctrine was laid down in the case of *Mobile & Ohio Railroad Co. v. Williams* (53 Ala. 595), and has since been followed in several other cases; and the statute then construed (Rev. Code, §§ 1399, 1401) having been carried without change into the Code of 1876 (§§ 1699, 1700), this is a legislative adoption of that judicial construction.

3. *Appraised value of animal killed, as admission against owner, and explanation thereof.*—The plaintiff having procured appraisers to value his horse which was killed, and to certify to the correctness of his claim

[E. T., Va. & Ga. R. R. Co. v. Bayliss.]

at their valuation against the railroad company, this appraisement is an admission on his part of the value of the horse as stated; but it is subject to be explained, or rebutted, by proof of any fact connected with the appraisement which is admissible as a part of the *res gestæ;* as, that he told them to put the lowest cash value on the animal, not exceeding the sum fixed by them, because the agent of the railroad company had promised that the claim should be paid at once without abatement.

4. *Objection to question and answer.*—When a question calls for irrelevant or illegal evidence, and the answer to it is illegal or irrelevant, an objection to the question is sufficient to exclude the answer; but, where the answer is not strictly responsive to the question, though apparently suggested by it, the objection to the question does not cover the independent matter thus elicited.

5. *Service of process on agent, for corporation.*—In an action against a railroad company, for injuries to stock, the summons and complaint may be served on a "depot-agent" (Code, § 1714), without the affidavit required (*Ib.* § 2935), in other actions against corporations, when the service is on any other person than the "president, or other head thereof, secretary, cashier, or managing agent."

6. *Presentment of claim, and limitation of action.*—A claim for damages against a railroad company, for stock killed or injured, is "barred, unless complaint is made within six months after such killing or injury" (Code, § 1711); but a presentment of the claim in writing, within the six months, to the president, treasurer, superintendent, depot-agent, or agent specially appointed to look after such claims, is sufficient to avoid the bar, although suit is not commenced until after the lapse of six months.

7. *Duties of engineer; facts excusing injury.*—It being shown that the horse which was killed leaped on the track in such close proximity to the engine that it was impossible to stop or check the train in time to avoid the injury, this would not only authorize a verdict for the defendant, but would require it, "provided it was also shown that the engineer kept a proper look-out for stock, and could not have seen the horse, even by the exercise of the very great diligence exacted by his situation;" and in determining whether the engineer kept a proper look-out, "the jury must consider that other duties also devolve upon him, which may interfere, to some extent, with the constancy of uninterrupted observation."

8. *Neligence vel non; when question of law, and when of fact.*—The question of negligence *vel non* is a question of law for the decision of the court, "only when the case is so free from doubt that the inference of negligence to be drawn from the facts is clear and certain;" in all other cases, it is a question of fact for the determination of the jury.

9. *Same.*—Whether it is negligence for an engineer to run his train at a stated number of miles per hour, is generally a mixed question of law and fact, dependent upon many controlling circumstances, such as the condition and structure of the road, its grade, straightness or curvature, the character and capacity of the brakes, &c.; and when there is no evidence as to any of these controlling facts, it is properly left to the jury to decide whether he was guilty of negligence in running his train at the rate of thirty-five or forty miles per hour at the time of the accident.

10. *Setting aside service of process.*—The issue of the summons and complaint, not the service of process, is the commencement of the action; and the setting aside of the service, on account of irregularities, does not abate or discontinue the suit.

APPEAL from the Circuit Court of Lawrence.

Tried before the Hon. H. C. SPEAKE.

This action was brought by John W. Bayliss, to recover damages for the killing of a horse by the alleged negligence of the

defendant's servants, and was commenced on the 10th December, 1881. In the original summons and complaint the defendant was described as "the Memphis & Charleston Railroad Company (East Tenn., Virginia & Georgia Railroad Company, lessee), corporation owned and operated in the State of Alabama, under act of legislature of said State;" and the plaintiff's attorney having made affidavit that the president (or other head), secretary, cashier, or managing agent of the defendant corporation, was unknown to him, the summons was returned executed, December 13th, 1881, "by leaving copy of the within summons and complaint with W. V. Chardavoyne, R. R. agent, defendant." At the ensuing April term, 1882, as the judgment-entry recites, "came the Memphis & Charleston Railroad Company, by attorney, and moves the court to set aside *the process* in this case, because of misnomer of party defendant, and for other reasons in said motion stated;" and this motion being sustained by the court, it was further ordered, on motion of the plaintiff, "that plaintiff have leave to amend his summons and complaint, by striking out the words, '*East Tenn., Virginia & Georgia Railroad Company, lessee,*' where they occur in said summons and complaint; and that plaintiff have leave to amend his complaint, by making the East Tennessee, Virginia & Georgia Railroad Company party defendant; and that an *alias* summons and complaint issue, to be served on said Memphis & Charleston Railroad Company, and also on said East Tennessee, Virginia & Georgia Railroad Company." An *alias* summons and complaint was thereupon issued, which was returned executed, September 1st, 1882, "by leaving copy with W. V. Chardavoyne, depot-agent, for E. T., Va. & Ga. R. R. Co., defendant;" also, September 7th, 1882, "by leaving copy with James White, agent M. & C. R. R., defendant;" and November 11th, 1882, executed "on Memphis & Charleston Railroad Company, by leaving copy with S. R. Cruse, treasurer of said corporation." Each of the corporations appeared, by attorney, and separately pleaded, "in short by consent," 1st, not guilty; 2d, that the plaintiff's claim was not presented in writing, within six months after it accrued, to the president, treasurer, superintendent, or any depot-agent of this defendant, nor was suit brought thereon within said term of six months; 3d, the statute of limitations of one year; 4th, a special plea averring the lease of the Memphis & Charleston road to the East Tennessee, Virginia & Georgia corporation, and the exclusive liability of said latter corporation for all damages at the time of the alleged injury. Issue seems to have been joined on all of these pleas. Before entering on the trial, the East Tenn., Virginia & Georgia corporation moved the court to set aside the service of process on W. V. Chardavoyne, as depot-agent for

said corporation, "because said service of process upon him was without an affidavit being made as required by law;" and an exception was duly reserved to the overruling of this motion.

The evidence adduced on the trial, all of which is set out in the bill of exceptions, showed that the plaintiff's horse was killed on the morning of the 16th October, 1881, a few minutes before daybreak, by a train which was moving, as the engineer in charge testified, at the rate of thirty-five or forty miles per hour, being about twenty minutes late; and the place was about three-quarters of a mile distant from Town Creek station, which the train was approaching. At that place, and for some distance beyond, there was a fence on each side of the railroad; that on the north side being about thirty feet from the railroad track, and that on the south having a gap in it at the place where the horse was killed. Several witnesses for the plaintiff, who saw the horse and walked over the ground about an hour after the accident, testified from an examination of the horse's tracks, on the north side of the road, that he must have run along the path, parallel with the railroad, from 150 to 175 yards, and been killed just as he jumped on the track, opposite the gap in the fence on the south side; and one of the witnesses stated that, judging from his stride, he must have been running at the rate of a mile in five minutes. The plaintiff's witnesses testified, that the road was level, and the track straight, for about a mile from the place where the horse was killed; while other witnesses stated that there was a down grade on the road at that place, the track running on an embankment, about three feet high, which was succeeded by a shallow ditch near the gap in the fence. The engineer in charge of the train, who was examined as a witness for the defendant, testified, " that he never saw the horse until he sprung on the track about ten feet in front of the engine; that he immediately reached up his hand to sound the cattle alarm, but struck the horse before he could do so; that his head-light was in good order, burning brightly, and was as good as any head-light in use on any railroad; that by it, at that time of night, he was not able to discover an object ahead of him on the track more than one hundred yards; that the head-light, by reason of its focus, enables an engineer to see objects on the track some distance, better than objects near at hand, or on the side of the track; that the equipments and appliances of the engine and train were of the best description, and in perfect order; that he was himself at his post, in the vigilant discharge of his duties, and keeping a sharp look-out ahead, and he did not see any obstacle, or any object anywhere, until the horse jumped suddenly on the track, as stated; that the train was then running at from thirty-five to forty miles an hour, which was not

faster than regular schedule time; that the horse, when he jumped on the track, was so near him that it was impossible to stop the train, to reverse the engine, to sound the cattle alarm, ring the bell, or do any thing else before the animal was struck; that it takes seven or eight seconds to get an engine reversed, and that the train, at the rate it was then running, could not have been stopped by any human agency under 250 yards." This was the substance of the evidence adduced on these points.

As to the value of the horse, two of the plaintiff's witnesses testified that he "was worth $300, or over;" another, that he was worth $250; while it appeared that two appraisers, selected by the plaintiff, had valued him at $200. As to this valuation, or appraisement, the plaintiff himself thus testified as a witness in his own behalf: "Witness obtained from Mr. Hartly, section foreman of the railroad, a blank form of voucher for making the usual valuation of stock killed, and selected Mr. Jolly and Mr. Lemay, as two disinterested persons, to value the horse. Witness understood said Hartly to tell him, at the time said voucher was furnished, that he should get the horse valued at the lowest reasonable cash valuation, and he would be paid that in cash without deduction. Said appraisers valued the horse at $200." "Witness was then asked this question: 'State why the horse was valued at $200 by the appraisers;'" and answered, "that it was because he told them not to value it at above $200; that he had written to Mr. White about his horse having been killed, and had received no reply, but, from his conversation with said Hartly, he understood that the appraiser's valuation would be paid in cash without deduction, provided it was the lowest reasonable cash valuation, and therefore did not wish them to exceed $200 in their valuation." To this question and answer, each, the defendant objected, "because it was irrelevant and incompetent evidence, and because it sought to elicit hearsay proof;" and duly excepted to the overruling of said objections. One of the appraisers, who was examined as a witness for the plaintiff, and who testified that the horse was worth $250, though he had signed the appraisement at $200, "was asked by plaintiff to state the reason why he appraised the horse at $200;" and answered, "that it was because plaintiff asked them to place the valuation at the lowest cash value, not to exceed $200, as he expected to be paid cash for it without deduction." The defendant objected to this question, "because it sought to elicit irrelevant evidence, and evidence calculated to mislead the jury;" and to the answer, "because it was irrelevant evidence, included the *ex-parte* statements of the plaintiff himself, and was calculated to mislead the jury;" and exceptions were reserved to the overruling of these objections.

The court charged the jury, in writing, as follows: "The

first question to be determined is, whether the facts entitle the plaintiff to recover against either of the defendants. Under the provisions of the statute, when the plaintiff proves that his horse was killed by the train of the defendants, and that the killing was done in Lawrence county, and also the value of the horse, he has made out a *prima facie* case; and if the proof stopped there, the plaintiff is entitled to recover, provided he also proves that he has presented his claim to the defendant, or brought suit thereon, within six months after the killing. When the plaintiff has proved the above facts, then the burden of proof is shifted, and it devolves on the defendant to show that it is not liable for the damages resulting from the killing of the horse : *it then devolves on the defendant to show by its proof that it, through its agents and employees, has complied with the provisions of the statute, and has been guilty of no negligence.* . . Under the statute, it is the duty of the engineer, on perceiving any obstruction on the track, to use all means in his power known to skillful engineers, such as the application of brakes, the reversal of his engine, &c., in order to stop the train ; and if you believe that the engineer in charge of this train, on perceiving the horse on the track, failed to use all the means in his power known to skillful engineers in order to stop the train, and that the killing of the horse resulted from such failure on the part of the engineer, then the plaintiff is entitled to recover. But, if you believe, on the contrary, that the killing would have resulted, even though the engineer had used all the means in his power known to skillful engineers, in order to stop his train, then your verdict should be for the defendant, unless you find that the engineer was guilty of some other negligence than that above defined as statutory. *But the plaintiff says, that the defendant, through its engineer, was guilty of negligence in not seeing the horse before he got on the track;* that *he was running the train faster than schedule time.* It is for the jury to determine whether or not that was negligence on the part of the engineer ; and in order to do this, the jury must look to all the evidence in the case—the time of night when the accident occurred ; the head-light ; the speed of the train at the time, whether faster than schedule time ; the location of the railroad, with the fences contiguous thereto ; the running of the horse parallel with the train and engine, together with all the other evidence ; and if they find, from all the evidence, that the engineer in charge of the train did not exercise the care, watchfulness and skill, that a prudent and careful man would exercise in the management of his own affairs, then the defendant is guilty of negligence ; and if they find that the killing was the result of such negligence, then their verdict should be for the plaintiff. *But, if the jury be-*

lieve, from the evidence, that the engineer used all the care and skill that a prudent man could or would have used in the management of his own affairs, then the defendant is not guilty of negligence, and their verdict must be for the defendant."

To the several italicized portions of this charge, each, the defendant duly excepted, "and also to so much of said charge as instructed the jury that, in determining the question of negligence *vel non*, they could look, among other things, '*to the speed of the train at the time—whether faster than schedule time.*'" The defendant then requested, in writing, the following (with other) charges, each of which was refused by the court, and exceptions duly reserved to the refusal of each.

"1. If the jury believe, from the evidence, that the engineer was at his post, and in the discharge of his duty, and was exercising that degree of diligence which very prudent persons observe in the conduct of their own business, then simply because he failed to see the horse, when running on the side of the track, does not make the defendant liable for the accident.

"2. If the jury believe, from the evidence, that when the horse went on the railroad track, the front of the engine was so near him that it was impossible for the engineer, before the engine struck the horse, to stop the train, or to sound the cattle alarm; then the jury would, upon this state of facts, be authorized to find for the defendant.

"3. If the jury find, from the evidence, that the accident occurred before day-light, and that the train was then moving at the rate of thirty-five miles an hour, and that the engine was so close to the horse, when he went on the track, that it was impossible to stop before striking him; then, upon this state of facts, the jury would be authorized to find for the defendant.

"4. The laws of the State do not require that either a railroad, or the lands of individuals, shall be so fenced about and inclosed that domestic animals, going at large, can not get upon them. Of course, though, the owners of such uninclosed property would be liable for damages resulting from any violence they should do to live stock straying thereupon, whether caused by acts willfully, or only negligently committed. But it does not follow that they must take upon themselves the care or protection of such wandering stock, or that they must, from fear of doing hurt thereto, refrain from using their own premises in any lawful manner beneficial to themselves. The owners of animals thus turned out, to go at large upon the premises of another, must bear the loss that must come to them from any mere accident not attributable to the positive misconduct or carelessness of another person. Therefore, if the jury believe, from the evidence in the case, that the plaintiff's horse was turned out, by those in charge of him, to run at large in a

[E. T., Va. & Ga. R. R. Co. v. Bayliss.]

field, and upon the uninclosed track of the railroad, and, whilst so running at large, strayed at or near said track, and got upon it, and was run over and killed by the cars of the railroad, the defendants would not be liable for such killing, if the jury should conclude, from all the evidence and circumstances of the case, that the killing was not the result of the positive misconduct or carelessness of the defendants, their agents, or servants.

" 5. A railroad certainly has a right to the free and uninterrupted use and enjoyment of its road-bed; and this right is the same in character and degree that the owner of the freehold has to. the exclusive use, enjoyment and occupation of his premises. Therefore, if the jury should find that the plaintiff's horse went upon the track of the railroad, where he was run over, or hit by the engine, and killed, and should conclude, from all the evidence in the cause, that the killing was not the result of the positive misconduct or carelessness of the defendants, their agents, or servants, then they would not be liable therefor, and the verdict of the jury should be for the defendants.

" 6. If the jury find, from the evidence, that the plaintiff did not present his claim for damages, in writing, within six months from the day his horse was killed, to the president, treasurer, superintendent, or some depot-agent of the defendants, or either of them, the plaintiff cannot recover in this suit.

" 7. The engineer was not, as matter of law, required to see the horse when he was running at the side of the track.

" 8. If the jury find, from the evidence, that the engineer was running the train at the rate of thirty-five or forty miles an hour, they are not warranted in inferring that rate of speed was negligence of itself."

The jury returned a verdict in favor of the plaintiff, against the East Tennessee, Virginia and Georgia Railroad Company, and the court thereupon rendered judgment against said corporation, and that the other defendant go hence. The appeal is sued out by said railroad corporation, and all the rulings of the court to which exceptions were reserved, together with the judgment on the verdict, are now assigned as error, making thirty assignments in all.

HUMES, GORDON & SHEFFEY, for appellant.—(1.) The process was served upon a supposed agent of the defendant corporation, without the statutory affidavit required, in all actions against corporations, where the service is not made upon one of the designated officers.—Code, §§ 2934–35. (2.) The suit was commenced against one corporation, and judgment was rendered against another. When the original summons was set

aside and quashed, at the instance of the M. & C. Railroad Company, the suit was at an end, and there was nothing to amend by. The *alias* summons, as it is called, was the commencement of the suit against the E. T., V. & G. corporation, and was issued more than twelve months from the date of the injury. If it had been issued before the expiration of twelve mouths, no recovery could be had against said corporation, unless plaintiff had proved a presentment of his claim, in writing, within six months, as asserted in the 6th charge requested. (3.) The court erred in its various rulings on the evidence, allowing one of the appraisers to state their reason for valuing the horse at $200, and permitting the plaintiff to testify to his own *ex-parte* statements to the appraisers.— *Whetstone v. Br. Bank of Montgomery*, 9 Ala. 875; *Clement v. Cureton*, 36 Ala. 120; *Oxford Iron Co. v. Spradley*, 51 Ala. 172; *Stringfellow v. Mariott*, 1 Ala. 573. (4.) The court erred, also, in its instructions to the jury as to the burden of proof on the question of negligence. The statute imposes upon the railroad company, when an injury has been shown, the burden of proving a compliance with all the statutory requisitions, and makes it responsible for all damages resulting from the non-compliance; but the instructions of the court go beyond this, and require the defendant to acquit itself of negligence, as well as to show a compliance with the statutory regulations. The case of *M. & O. Railroad Co. v. Williams*, 53 Ala. 599, goes beyond the statute, and the charge of the court goes beyond that case. The statute is in derogation of common-law principles, and should not be extended by construction.—Sedgw. Stat. & Const. Law, 267, 2d ed.; 8 Md. 25; 46 Me. 377; 1 H. & J. 567; 4 Mass. 534; 43 Ala. 605. (5.) There was no conflict in the evidence, and no circumstance was shown from which the inference of negligence could be drawn. The engineer testified that the train was running at the rate of thirty-five or forty miles per hour, and that this was not faster than schedule time; and this was the only evidence on that point. On this evidence, the question of negligence *vel non* did not arise, and it ought not to have been submitted to the jury.

W. P. CHITWOOD, and JAS. C. KUMPE, *contra.*—(1.) In such an action as this, service of process upon a depot-agent is authorized by the express words of the statute.—Code, § 1714. (2.) The value of the horse was a proper subject of inquiry; and one of the appraisers having stated, without objection, that he was worth $250, and that they had appraised him at only $200, it was competent to explain these inconsistent statements by proof of any facts connected with the appraisement. If the questions to plaintiff were not proper when asked, they

[E. T., Va. & Ga. R. R., Co. v. Bayliss.]

became so after Jolley was examined.—*McCoy v. Watson*, 51 Ala. 466; 1 Brick. Digest, 809, § 86. (3.) The issue of the original summons was the commencement of the action, although the service was quashed; and there was evidence showing a presentation in writing, within six months, to White, defendant's agent.—*Railroad Co. v. Brown*, 53 Ala. 651; *Railroad Co. v. Hagood*, 53 Ala. 647; *Railroad Co. v. Morris*, 65 Ala. 193; *Huss v. Central R. R. Co.*, 66 Ala. 473. (4.) As to the burden of proof, the charge of the court is sustained by *M. & O. Railroad Co. v. Williams*, 53 Ala. 595; and *S. & N. Railroad Co. v. Williams*, 65 Ala. 74. (5.) The question of negligence *vel non* was properly submitted to the jury.—*M. & C. Railroad Co. v. Lyon*, 62 Ala. 71; *Ala. Gr. So. Railroad Co. v. Jones*, 71 Ala. 487.

SOMERVILLE, J.—In the case of the *Mobile & Ohio R. R. Co. v. Williams*, 53 Ala. 595, the question as to the burden of proof, in suits for injuries to stock by the cars and locomotives of railroad companies, is fully discussed; and the rule is announced, that when the fact of the injury by the company, or its servants, is proved by the plaintiff, a *prima facie* case exists, and the burden of proof is then on the railroad company, which is sued as defendant, "to acquit itself of negligence, or to show a compliance with the statute." If the injury occurs at the places, and under the circumstances detailed in section 1699 of the Code, then it will be sufficient to show a compliance with the requirements of the statute. If under other circumstances than these, the evidence must be sufficient to satisfy the mind of an unprejudiced jury that the injury occurred without such negligence as would render the defendant liable under the general rules of law governing the doctrine of negligence.

Whatever doubts may be entertained as to the strict soundness of the construction placed upon sections 1399 and 1401 of the Revised Code of 1867, by the opinion of the court in that case, we are unwilling to disturb its authority, for the reason, that the sections construed have since been re-adopted by the General Assembly into the present Code of 1876, and this was an adoption of the judicial construction previously placed upon them.—Code, 1876, §§ 1698–1700; *Ex parte Matthews*, 52 Ala. 51. The case has, moreover, been several times followed in subsequent decisions of this court.—*S. & N. R. R. Co. v. Thompson*, 65 Ala. 74.

There was no error in the charge of the Circuit Court in reference to the burden of proof, which is admitted to be in accordance with the rule above stated.

The fact that the plaintiff had valued his horse, claimed to

have been killed, at only two hundred dollars, or suffered it to be so valued by the appraisers whom he selected and procured to certify to the correctness of his claim, was an admission on his part as to the just value of the animal. This could be rebutted by any fact tending to show that this valuation was not based upon the real and true opinion of the persons selected to make the appraisement. It was a part of the *res gestæ*— the act of appraisement itself—that the seemingly low valuation was induced by the plaintiff's own persuasion; and hence the testimony of the several witnesses on this point was unobjectionable, whatever objection there may have been to the form of the question by which it was elicited. Where a question is obnoxious to objection, which is duly interposed, and the witness makes an answer to it not strictly responsive, but apparently suggested by it, the objection to the question does not cover the independent matter thus elicited.—*Barnes v. Ingalls*, 39 Ala. 193. It is only where the answer itself is irrelevant or illegal evidence, and is called for by the question propounded, that no separate objection to the answer is required.—*Gilmer v. City Council*, 26 Ala. 665.

The motion to set aside the service of the summons and complaint, for the want of a proper affidavit, was properly overruled. Where a suit is brought against a railroad company for *injury to stock* cognizable in a Circuit Court, process may be executed on any one of the officers or agents designated in section 1714 of the Code, among whom is expressly included "a depot-agent;" and for this purpose no affidavit is required.— Code, 1876, § 1714. It is only in suits of another nature, other than for injuries to stock, that the affidavit required by section 2935 of the Code is required to be made, and then only where the road sued is a corporation.

A claim for damages to stock injured or killed by a railroad train is barred, under the statute, "unless *complaint is made* within *six months* from the date of such killing or injury."— Code, 1876, § 1711. This may be done by presenting the claim, in writing, to "the president, treasurer, superintendent, or some depot-agent of the railroad company" (*Ala. Gr. Southern R. R. Co. v. Killian*, 69 Ala. 277; Code, § 1701); or by bringing suit against the railroad company within the required time.—*S. & N. Ala. R. R. Co. v. Morris*, 65 Ala. 193. So, if the company appoints a special agent for the purpose of reporting such claims, and the claim is preferred to such agent, and he reports it in writing to the company within six months, this has been adjudged sufficient.—*S. & N. Ala. R. R. Co. v. Brown*, 53 Ala. 651.

It is true that the present suit was not commenced against the appellant within six months from the date of the injury

sued for; but there was evidence tending to show that the claim was presented to the depot-agent of the defendant, and also to their authorized agent, White, who was appointed to look after such claims. The *sixth* charge requested by the defendant was properly refused, because it entirely ignored the alleged presentation to White, and his probable transmission of it to the company, and also withdrew from the jury, as a question of fact, whether the space of six months had elapsed from the time of the injury to the date of bringing the suit.

If the testimony of the engineer was true, to the effect that, when the horse leaped on the track, he was in such close proximity to the engine that it was impossible to arrest the progress of the train so as to prevent the injury, this state of facts would not only *authorize* the jury, but would render it their *duty*, to find a verdict for the defendant, *provided* that the engineer had kept a proper lookout for stock, and could not have seen the horse, even by the exercise of the very great diligence exacted by his situation. We have often announced the rule, that the law demands of railroads and their servants that degree of care which very prudent persons take of their own affairs, and that infallibility is not required.—*Cook v. The Central Railroad, &c.* 67 Ala. 533, and cases cited. In determining whether the engineer was guilty of negligence in looking out for probable obstructions on the track, the jury must consider that other duties also devolve upon him, which may interfere, to some extent, with the constancy of uninterrupted observation.

In all cases not free from doubt, either where the evidence is conflicting, or where it is not, and different minds may reasonably draw different inferences or conclusions on the subject, the question of negligence is one of fact for the determination of the jury. It becomes a question of law, to be decided by the court, only when the case is so free from doubt as that the inference of negligence to be drawn from the facts is clear and certain.—*The City Council of Montgomery v. Wright*, 72 Ala. 411; Whart. on Negl. § 420; *Lanier v. Youngblood*, at present term.

In view of these principles, the *first* and *seventh* charges requested by the appellant were erroneous, in submitting to the determination of the court, as matter of law, the question of the engineer's negligence *vol non*, based upon his alleged failure to keep a proper lookout; and the *second* and *third* charges were also objectionable, in withdrawing the consideration of this question entirely from the jury. These charges were, therefore, properly refused.

Whether it be negligence for an engineer to run his train at a certain rate, or number of miles per hour, can not be said

[Farris & McCurdy v. Houston.]

always to be a question for the court to determine. It is most generally a mixed question of law and fact, dependent upon many controlling circumstances, including the condition and structure of the road, the relative straitness of the road-bed, or declivity of the grading, the character and capacity of the brakes in use, and other circumstances of like kind. There is no proof as to these various conditions in the present case, and we are not able to say that it was, or was not, *per se* negligence for the engineer to have been running his train at the rate of from thirty-five to forty miles per hour, at the time of the accident in controversy. This question was properly left to the jury, and the several charges requested by defendants were erroneous, which sought to devolve its determination upon the court as a pure matter of law.

We are unable to see upon what ground the *fourth* and *fifth* written charges requested by the defendants were refused to be given. The killing of plaintiff's stock must have been attributable either to positive misconduct, in the nature of a willful or intentional act on defendant's part, or else to carelessness, or to inevitable accident. If it was not the result of either of the two first causes, it certainly was of the last, and was, therefore, in such event excusable. The refusal of these charges was error, the preliminary portions of them being unobjectionable.—*M. & O. R. R. Co. v. Williams*, 53 Ala. 595, 597.

The effect of quashing the *service* of the summons and complaint upon the Memphis & Charleston Railroad Company did not, as contended by appellant's counsel, operate to discontinue or abate the suit. The issue of the summons and complaint was the commencement of the suit, and its pendency was totally unaffected by the act of the court in setting aside the service for irregularity.—*Cotton v. Huey*, 4 Ala. 56; *Maverick v. Duffie*, 1 Ala. 433. The only effect was to to necessitate the issue and service of an *alias* process.

Reversed and remanded.