# East Tenn., Va. & Ga. Railroad Co. *v.* Bayliss.

*Action against Railroad Company, for Injuries to Stock.*

1. *Liability of railroad company, for injuries to stock; statutory provisions.*—The statutory provisions prescribing certain duties to be performed by railroad engineers " on perceiving an obstruction on the track of the road," making the railroad company liable for all damages to persons, stock or other property, resulting from a failure to comply with these requirements, and imposing on it, in an action for damages, the *onus* of proving compliance (Code, §§ 1699, 1700), only apply when there is an obstruction *on* the track of the road, against which the engine or train, running its proper course and direction, may strike, and it is perceived by the engineer; nor do the statutory duty and liability arise,

[East Tenn., Va. & Ga. Railroad Co. v. Bayliss.]

when an animal suddenly springs on the track in front of the engine, in such close proximity that human appliances can not avoid a collision.

2.   *Same, at common law.*—As to an animal running by the side of the track, though on the railroad's right of way, the duties of the engineer and the liability of the company for damages are to be determined by the principles of the common law, which require that the engineer should use the same care and diligence which a careful and prudent man, handling agencies of similar hazard and power, would use in the management of his own business; and the rule is the same, whether the animal is seen by the engineer, or is not seen because of his failure to observe proper watchfulness, so far as consistent with the performance of other duties equally imperative.

3.   *Giving charge as requested; rule as to error without injury not applicable.*—Charges asked, if in writing, "must be given or refused in the terms in which they are. written" (Code, § 3109); and when a charge asked is improperly refused, the doctrine of error without injury can not be invoked, because the court had already given a charge asserting substantially the same legal proposition.

4.   *Impeaching witness; charge as to witness not being impeached.*—One mode of impeaching a witness is to disprove by other witnesses the facts stated by him; and hence, a charge asked, asserting that "there has been no attempt to impeach the veracity of this witness," is properly refused, when there is any other evidence from which a contradiction of his testimony can be inferred.

5.   *Charge cautioning jury against prejudice or partiality, or couched in disrespectful language.*—While it is the duty of a juror to discard all prejudice or partiality, and to render a conscientious verdict without regard to consequences; and while it may sometimes be proper, or even necessary, that the presiding judge should impress upon the jury the necessity of a fearless discharge of this duty; yet a charge requested, assuming that they intend to disregard their oath and duty, or couched in language otherwise disrespectful to them, is properly refused.

6.   *Ambiguous charge, or charge requiring explanation.*—A charge requested, which is ambiguous, or tends to confuse the jury, or requires explanation or qualification, is properly refused.

APPEAL from the Circuit Court of Lawrence.

Tried before the Hon. H. C. SPEAKE.

This action was brought by John W. Bayliss, against the appellant corporation, to recover damages for the killing of a horse belonging to the plaintiff, by the alleged negligence of the defendant's servants; and was commenced on the 10th December, 1881.   On the first trial, the plaintiff had a verdict, on which judgment was rendered in his favor; but this judgment was reversed, on appeal sued out by the defendant, on account of the refusal of certain charges asked, and the cause was remanded.—75 Ala. 466-69.   On the second trial, issue being joined on the plea of not guilty, the plaintiff again recovered a verdict and judgment; from which judgment the defendant now appeals, assigning as error several charges given by the court on the request of the plaintiff, and the refusal of several charges asked by the defendant.   The facts disclosed by the evidence, so far as material to the questions now presented, were the same as on the first trial, and, briefly stated, were these:   The plaintiff's horse was killed, on the morning of

October 16th, 1881, by an engine and train of cars on the road of the Memphis & Charleston Railroad Company, which was then operated under a lease by the defendant corporation. The accident occurred about day-break, or a few minutes before, at a place nearly a mile distant from Town Creek station on said road, which the train was approaching. The train was fifteen or twenty minutes late, and was moving at the rate of thirty-five or forty miles per hour, as the engineer in charge testified; but he testified, also, that this was the regular schedule time. At the place where the dead body of the horse was found, and for some distance beyond, there was a fence on each side of the track. The tracks of the horse, as testified by the plaintiff's witnesses, showed that he had run in advance of the approaching train, for a distance of 150 or 200 yards, partly within the iron rails, and partly on the outside of the track; and that he was struck by the engine and killed, just opposite a gap in the fence on the south side, as he attempted to jump across the track. The engineer in charge of the train at the time, Thomas Kincella, was examined as a witness on the part of the defendant, and testified, in substance, that his head-light was at the time in good order and burning brightly, and was as good as any head-light in use on the road; that by its aid he could distinguish an object on the track one hundred yards ahead, but not further, and could not distinguish an object on either side of the track; that he was in the vigilant discharge of his duties at the time, and was keeping a sharp lookout ahead; and that he did not perceive the horse until he jumped on the track, just in advance of the engine, so near that it was impossible to reverse his engine, stock or check the train, or do anything else to avoid a collision.

This being the substance of the evidence, the court gave the following charges at the instance of the plaintiff: (1.) "If the jury believe, from the evidence, that the engineer did not see the horse until he sprung upon the track, and until it was too late to avert the accident, but that, if he had exercised a proper degree of watchfulness, he could have seen him in time to prevent the injury; then he was guilty of negligence, and the defendant would be liable." (2.) "If the jury believe, from the evidence, that the engineer, with a proper degree of watchfulness, would have seen the horse before he sprang on the track, and that his failure to do so was the result of a want of keeping a proper lookout, and that by keeping a proper lookout he would have seen the horse in time to prevent the injury; then the defendant is liable." (3.) "The jury can infer that the engineer did not keep a proper lookout, from circumstances as well as from facts; but such inference must be drawn from the evidence."

The defendant excepted to each of these charges as given, and requested the following charges in writing:

"1. If the jury believe the evidence, they must find for the defendant.

"2 If the jury believe, from the evidence, that the engineer was at his post, and in the discharge of his duty, and was exercising that degree of diligence which very prudent persons observe in the conduct of their own business; then, simply because he failed to see the horse, when running on the side of the track, does not make the defendant liable for the accident.

"3. If the jury believe, from the evidence, that the horse ran between ninety and one hundred yards between the iron rails of the railroad, and was so running by reason of the train being behind time, and that the train was running at the rate of thirty-five or forty miles per hour; then it would have been a physical impossibility for the horse to have left the track after completing said ninety or more yards, and to have reached the place where he was killed before the train reached there.

"4. If the jury believe the evidence testified to by the witness Seay [a witness for plaintiff], if they find that he so testified, that an engineer, or other person on an engine, could not see by the aid of the head-light, on the side of the track, at a greater distance than eight on ten feet; if the jury believe this evidence, then, if they believe the uncontradicted evidence in the case, it was an impossibility for the engineer to stop his engine, running at the rate of thirty-five or forty miles an hour, within the space of less than 250 yards; and it was not necessary for the engineer to attempt the impossible in fact.

"5. If the jury believe, from the evidence, that the killing of the plaintiff's horse was an accident, which could not have been averted by the use of the utmost care and watchfulness on the part of the defendant's employees; then the jury can not render a verdict in favor of the plaintiff, without a willful disregard of their oaths, and a stigma upon their position in the jury-box as impartial jurors; and that their verdict, if so rendered notwithstanding their belief in such evidence, would be simply tyrannical confiscation.

"6. There has been no attempt in this case to impeach the veracity of the engineer, and the presumption is that he has sworn the truth. His evidence should be fairly and impartially weighed by the jury; by his intelligence, his manner, the consistency of his story, its probability or improbability, and all the other tests which do or do not convince; and if the jury, after applying all these tests, are convinced of the truth of his evidence, they have but one plain duty, and that is to render a verdict in favor of the defendant.

"7. The fact that the plaintiff is a citizen of Lawrence

[East Tenn., Va. & Ga. Railroad Co. v. Bayliss.]

county, and has lost his horse by the defendant's train running against it and killing it, does not, in and of itself, under the evidence in this case, if the jury believe all the evidence, justify a verdict against the defendant.

" 8. The testimony of the witness Kincella should be weighed by you, gentleman of the jury, fairly and impartially, applying all those legitimate tests by which a narrator does or does not convince. Each one of you is a sworn juror in search of truth, and should be blind to consequences. You have taken a solemn oath to try this case well and truly, and to render a true verdict according to the evidence. If you willfully disbelieve and disregard the evidence of this engineer, without having any just ground for so doing, your verdict for the plaintiff will be a false verdict, rendered with an utter disregard of your sworn duty.

" 9. There is no room in the jury-box for prejudice or partiality; and I charge you, gentlemen of the jury, that you have no more right to render a verdict against the railroad by reason of prejudice against it, or to render a verdict for the plaintiff because of partiality for him, then you would have to steal one man's property to give it to another.

" 10. If the jury believe, from the evidence, that when the plaintiff's horse went on the track of the railroad, the front of the engine was so near him that it was impossible, before the engine struck him, to stop the train, or sound the cattle-alarm; then the jury would, under this state of facts, be authorized to find for the defendant."

The court refused each of these charges, and the defendant duly excepted to their refusal. The bill of exception recites, in connection with said charge No. 2, that the court, before refusing it, had given a charge requested by defendant, in these words: "If the jury believe, from the evidence, that the engineer was at his post, and in the discharge of his duty, and was exercising that degree of diligence, attention and watchfulness, which very prudent persons observe in the conduct of their own business; then, if the jury also find, from the evidence, that he failed to see the horse while running on the side of the track, this would not make the defendant liable."

The charges given at the instance of the plaintiff, and the refusal of the several charges asked by the defendant, with other matters, are now assigned as error.

HUMES, GORDON & SHEFFEY, for appellant.

W. P. CHITWOOD, and J. C. KUMPE, contra.

CLOPTON.—The General Assembly, deeming the common-

28

law rules insufficient for the ample protection of persons, stock, and other property, enacted statutes regulating and defining in certain cases the duties and liabilities of railroad companies. These statutes have been repeatedly examined and considered, and their construction may be regarded as well settled. Section 1699 of Code, after making it the duty of the engineer to give specified signals, on approaching, passing, and leaving designated places, provides: "He must, also, on perceiving any obstruction on the track of the road, use all means known to skillful engineers (such as the application of his brakes, and the reversal of his engine), in order to stop the train." The succeeding section (1700) makes the company liable for all damages to persons, stock or other property, resulting from a failure to comply with the requirements of section 1699; and when any stock is killed or injured, or other property damaged or destroyed, by the locomotive or cars, the burden of proof is on the company to show that the requirements of the statute were complied with.

The statute is a modification of the common law. The absolute duty to use all means to stop the train, on perceiving an obstruction on the track, did not exist independent of the statute. It might or it might not be a duty, according to the circumstances. In some conditions, safely consists in quickening the speed. The statute ought not to be extended by construction to cases not included in its clear and unambiguous terms, especially as a failure to comply with the requirements of the statute is made a misdemeanor. To originate the statutory duty, there must concur an obstruction on the *track* of the road, against which the locomotive or train may strike while running its proper course and direction, and it must be perceived by the engineer. An animal, though near the road, and on the company's right of way, is not an obstruction on the track of the road, within the meaning of the statute.—*L. & N. R. R. Co. v. Reidmond*, 11 Tenn. 205. When it is sought to hold the company liable for damages resulting from a failure to comply with the requirements of the statute, the inquiry should be directed to the ascertainment of the fact, on the existence of which the statutory duty arises. To establish it, positive proof is not essential. Like any other fact to be judicially ascertained, circumstances, from which the inference may be reasonably and satisfactorily drawn—convincing to the mind —will be sufficient. When the fact exists, it is the duty of the engineer to use all means, known to skillful engineers, to stop the train: and when it is established on the trial, the burden is on the company to show a compliance with the requirements of the statute. The law, however, does not exact an attempt of the impossible. If an animal suddenly springs on the track, in front of, and so

near to the engine, that no human appliances could avail to avoid the injury, the engineer does not violate his statutory duty in not making the attempt to stop the train.—See this case, at the last term, 74 Ala. 150, and 75 Ala. 466.

This construction of the statute does not relieve the company of all liability, when the obstruction is not on the track of the road. When an animal is off the track, and is discovered in close proximity, under circumstances indicating danger, the duty and liability of the company are governed by the rules of the common law.—*S. & N. Ala. R. R. Co. v. Jones,* 56 Ala. 506. The employees are required to use the care and diligence which a careful and prudent person, handling agencies of similar hazard and power, would employ in the management of his own business. All reasonable care and diligence should be observed, to prevent danger or injury. If a horse is seen on the side of the road, or running along its line, while the train is in motion, proper means should be used to frighten him away; and if the road is fenced on both sides, the horse running between the fence and the road, and the first opening is on the opposite side, the expectation that he would attempt to cross at the first opening is natural; and under such circumstances, it is the duty of the engineer to adopt means to check the speed of the train, that the horse may safely pass, unless checking involves more peril than continued running.

We have stated the rule governing the liability of the company, on the hypothesis that the animal is seen. Actual discovery is not essential. The obligatory care and diligence consist, both in a proper watchfulness, and in the use of the appropriate and necessary means to prevent an accident, when the danger is discovered. When the animal is not seen because of the inattention or negligence of the engineer, and injury results by reason thereof, the company is liable, as if the animal had been observed. A proper lookout at all times, along the track, and near the road, is a duty enjoined by law. An engineer has other equally important duties in operating a train, which demand portions of his time and attention. It is not meant, "that the engineer shall keep his eye steadily on the track before him, to the neglect of his other equally imperative duties. . . . He meets this requirement, when he bestows on the service that steady, regular care and watchfulness, which his other duties allow a very careful and prudent person to give to it."—See this case, *supra.*

Negligence *vel non,* in such case, depends upon the attendant circumstances. The inquiry, to which the investigation should be directed, is, whether the engineer, by keeping a proper lookout, consistent with the discharge of his other duties, could have discovered the animal in time to prevent the in-

[East Tenn., Va. & Ga. Railroad Co. v. Bayliss.]

jury by the employment of due precautions. In this case, if, on the foregoing rules, the engineer could have discovered the horse in time to have checked the speed of the train, so as to have allowed him to escape, the company is guilty of negligence. On the other hand, if the engineer was in the discharge of his duties, and was using that degree of diligence which very prudent persons observe in the conduct of their own business, and did not discover the horse, until it sprang on the track in front of, and in such proximity to the engine, that no human agencies could have avoided the injury, the company is not liable. The question is, not whether the engineer could have possibly discovered the horse, but whether there was a reasonable capability of seeing him under all the circumstances.—74 Ala. 150.

There is no error in giving the charges asked by the plaintiff, as we understand them. If it was supposed they were calculated to mislead, explanatory or qualifying charges should have been requested. The second instruction asked by defendant should have been given. The doctrine of error without injury can not be applied to the refusal, because the court had previously given another charge asserting substantially the same legal proposition. The parties have a right to frame their charges, and, if correct, to have them given in the language used.—*Polly v. McCall*, 37 Ala. 20.

The presumption is, that every witness intends to tell the truth. It is unquestionably the duty of the jury, in scrutinizing and examining the evidence, to weigh fairly and impartially the testimony of each witness—judging his credibility by his conduct while testifying, the probability of his statements, his intelligence, and the other legitimate tests by which truth is ascertained; and a juror disregards the solemn obligation of his oath, when he rejects without a legal reason—capriciously or whimsically—the testimony of any witness. It is also conceded, that if the jury was convinced of the truth of the evidence of the engineer, it was their plain duty, on the principles of this opinion, to render a verdict for the defendant. Had the sixth charge merely asserted these legal propositions, it would have been unobjectionable. The error consists in the assumption of the fact, "that there has been no attempt to impeach the veracity of the engineer." One mode of impeaching a witness is to disprove, by other witnesses, the facts stated by him.—1 Green. on Ev. § 461. The charge, as framed, was properly refused, if there is any evidence from which a contradiction can be inferred.

While a juror should discard all prejudice or partiality, against or in favor of either party; and while it is oftentimes highly proper, and even necessary, that the presiding judge, in

order to secure a fair and impartial trial, should caution the jury against any undue influence, and impress the necessity of a fearless and conscientious discharge of their duties, without regard to consequences, and the disgrace which a disregard would bring upon the administration of the law ; such instructions should be couched in language not disrespectful to the jury, and not assuming, in advance, that any of the jurors intended to disregard their high and imperative obligations. Charges, to which these faults attach, may be properly refused.

A charge which is ambiguous, or requires qualification or explanation, or tends to confuse the jury, ought not to be given. The seventh charge is obnoxious to this objection. It is difficult to understand what legal proposition it was intended to assert.

We have not deemed it necessary, as there must be a reversal, to consider the remarks of counsel in the concluding argument. We refrain from doing so, in the expectation that counsel will not transgress the domain of legitimate argument.

Reversed and remanded.