# Western Union Telegraph Company v. Henderson.

### *Action for Damages against Telegraph Company.*

1. *Commencement of suit, as presentation of claim.*—The commencement of a suit against a telegraph company, and the service of process "within sixty days after sending the message," dispense with the necessity of presenting the claim within that period, as required by one of the conditions annexed to the printed blank, and are the equivalent of presentment.

2. *"Free-delivery limits;" burden of proof as to residence within or beyond.*—The printed blanks of the telegraph company, on which messages are required to be written, expressly declaring that messages "will be delivered free within the free-delivery limits, but a special charge will be made for delivery at a greater distance;" it will be presumed that the sender of a message knows whether the person to whom it is sent resides within or beyond those limits, and that he will make provision for delivery by informing the operator of the facts; and when it appears that he knew the limits of the free-delivery, but made no offer to pay a special charge for delivery, the *onus* is on him to prove residence within the limits.

3. *Measure of damages; mental anxiety.*—The message sent by plaintiff to a physician at or near a telegraph station about five miles distant, "*Come first train to see my wife, very low,*" not having been de-

[Western Union Telegraph Co. v. Henderson,]

livered for about twenty-four hours after it was sent; and it being shown that plaintiff's wife died a few hours after the arrival of the physician; the words of the dispatch naturally suggest the necessity of speedy delivery, if within free-delivery limits, and make plaintiff's mental anxiety an element of recoverable damages for delay in the delivery.

4. *Stipulations as to non-repeated messages.*—Where the cause of action is undue delay in the delivery of a message, which was received promptly at the terminal office, was understood, and correctly copied, but was not delivered until after the expiration of twenty-four hours, printed conditions on the blank, as to non-repeated messages, have no application to the case.

5. *Evidence as to business and pecuniary condition of defendant corporation.*—In an action against a telegraph company, for undue delay in the delivery of a message, which was sent from one office to another in the country only a few miles distant, the defendant can not be allowed to prove that its business and emoluments at the terminal office were not sufficient to justify the employment of a messenger boy to deliver messages; nor can the plaintiff be allowed to prove that the defendant is a wealthy corporation.

6. *Evidence as to physician's custom in answering summons.*—Plaintiff's message, delay in the delivery of which is the cause of action, having been addressed to a physician at or near the terminal office, five or six miles distant, the defendant can not be allowed to prove that it was not the custom or habit of the physician to answer professional calls at a distance, without pre-payment of his charges, or guaranty of payment; though, if it were shown that the physician would not have answered the call, if the message had been delivered promptly, this might show that plaintiff sustained no injury from the delay.

7. *Expressions of pain, suffering, &c., as evidence.*—The natural utterances and expressions indicative of pain, suffering, pleasure, displeasure, &c., are competent and original evidence of the physical or mental state indicated by them, whenever that state is a pertinent inquiry.

8. *Declaration of agent, as evidence against principal.*—The declaration of the defendant's operator at the terminal office, made to plaintiff the day after the message was sent and received, as to his reason for not delivering the message as soon as received, is not competent evidence against the telegraph company.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. CLARKE.

This action was brought by Louis Henderson, a freedman, against the Western Union Telegraph Company, a foreign corporation doing business in Alabama, to recover damages for the non-delivery of a telegraphic message within a reasonable time; and was commenced on the 12th August, 1887. The message was sent from St. Elmo, a small station on the railroad, addressed to Dr. Rohmer, who was plaintiff's family physician, at or near Grand Bay, another station about five miles distant; and was a summons to visit plaintiff's wife, who was said to be "very low." It was not written by plaintiff, but was stated by him verbally to the telegraph operator at St. Elmo, who wrote it out on one of the defendant's printed blanks, and at once

forwarded it to Grand Bay, where it was duly received. The message was sent about noon on the 26th June, and was not delivered to Dr. Rohmer until 9 or 10 o'clock, or later, the next day. The printed blank on which the message was sent, contained conditions and stipulations, some of which were pleaded in defense of the suit; but it is unnecessary to state them at length, since the material facts are set out in the opinion of the court. On the morning of June 27th, the plaintiff procured a horse and buggy, and went to Grand Bay for Dr. Rohmer, who returned with him, and prescribed for his wife; but she was suffering from peritonitis, and died a few hours afterwards. Plaintiff testified as a witness for himself on the trial, and stated that, on reaching Grand Bay when he went for Dr. Rohmer, he went to the railroad station, and asked the telegraph operator if he had not received the dispatch to Dr. Rohmer on the day before; and that on the operator acknowledging the receipt, and being asked why he had not delivered it to Dr. Rohmer, he answered, "because he had no time, it being nearly time for the train." To the admission of this evidence the defendant objected and excepted. During plaintiff's further examination, he was asked the following questions, and answered as stated: Q. "Was your wife apparently suffering any pain, or not? was she, or not, complaining of having pain, or being in agony?" A. "Yes; on that Sunday morning she was." Q. "Is your wife now living or dead?" A. "She died on the 27th June, 1887, about half past six o'clock." Q. "Did she, or not, steadily grow worse, from the time you sent the telegram until her death?" A. "After the doctor got there, she got easier, and I thought she was getting better all the time until she died. Up to the time the doctor arrived, she was getting worse every minute." To each of these questions and answers the defendant objected and excepted. Several other exceptions were reserved to rulings on evidence, but they require no special notice. It was shown, also, that the telegraph operators at St. Elmo and Grand Bay were in the employment, not of the defendant, but of the L. & N. Railroad Company; but that they were required by their contract with the railroad company to attend to the defendant's business at their respective stations.

The defendant requested numerous charges in writing, and among them the following: "(9.) A rule or regulation requiring extra compensation for delivery of a message be-

yond the limit of a half-mile, is a reasonable rule, which the
defendant had a right to demand that the plaintiff should
comply with; and if the plaintiff failed to comply with such
reasonable rule and regulation, the defendant was not bound
to deliver said message to the person to whom it was sent,
beyond said half-mile limit." The court refused each of the
charges requested, and the defendant excepted to their
refusal.

The assignments of error are 29 in number, and embrace
all the rulings of the court on the pleadings and evidence,
and in the matter of charges given and refused.

GAYLORD B. CLARK, and FRANK B. CLARK, for appellant.
(1.) The condition requiring presentation of a claim for
damages within sixty days is a reasonable one, and the in-
stitution of a suit does not show compliance with it. The
presentation is a pre-requisite to liability, and must precede
the institution of suit. It is in the nature of a condition
precedent, like the preliminary proof of death or loss in
insurance cases.—*Insurance Co. v. Felrath*, 77 Ala. 194;
Bates' Digest of Fire Insurance, 512–32; *Wolf v. W. U.
Tel. Co.*, 62 Penn. St. 83; *Young v. Telegraph Co.*, 65 N. Y.
163; *Telegraph Co. v. McKinney*, 8 Amer. & Eng. Corp.
Cases, 123. (2.) Dr. Rohmer did not live within the "free-
delivery" limits of the receiving station, and the plaintiff is
presumed to have known the fact; yet he made no effort to
secure prompt delivery of the message, by payment of a
small extra charge. The *onus* was on him to show that Dr.
Rohmer lived within the free-delivery limits. (3.) The
declaration of the agent at Grand Bay, on the day after the
message was sent, was not admissible as evidence as a
part of the *res gestæ*, nor on any other legal principle.
(4.) The evidence as to the condition of the plaintiff's wife,
her suffering and complaints, was outside of any issue in the
case. (5.) The plaintiff's mental pain and anguish, arising
from his wife's sufferings, after the telegram was sent, was
not an element of recoverable damages.—*Tanner v. L. & N.
Railroad Co.*, 60 Ala. 621; *Gildersleeve v. Telegraph Co.*,
Allen's Tel. Cases, 405; 113 Mass. 299; 63 Texas, 27;
39 Kansas, 93; *Russell v. W. U. Tel. Co.*, 3 Dak. 315; 84 Ala.
487; 7 Amer. St. Rep. 535; 42 Wisc. 23.

GREG. L. & H. T. SMITH, *contra.*—(1.) If the defendant
was guilty of unreasonable delay in the delivery of plaintiff's

[Western Union Telegraph Co. v. Henderson.]

message, it can not claim exemption from liability by reason of any conditions in the printed blank on which the message was sent.—*W. U. Tel. Co. v. Meredith*, 8 Amer. & Eng. Corp. Cases, 54; *W. U. Tel. Co. v. Way*, 83 Ala. 555; *Railroad Co. v. Johnson*, 75 Ala. 596; Allen's Tel. Cases, 390; *Telegraph Co. v. Tyler*, 74 Ill. 168; 14 Fed. Rep. 710; 3 Suth. Damages, 297, note. (2.) The commencement of the suit was a sufficient demand.—*Railroad Co. v. Bees*, 82 Ala. 340; *Railway Co. v. Bayliss*, 75 Ala. 160; *Hunley v. Shuford*, 11 Ala. 203; *Floyd v. Clayton*, 67 Ala. 265. (3.) It was entirely immaterial whether or not Dr. Rohmer lived within or beyond the free-delivery limits. The plaintiff paid the only charge demanded of him, and the failure to demand more was a waiver of any extra charge.—*Leigh Bros. v. M. & O. Railroad Co.*, 58 Ala. 174; *L. & N. Railroad Co. v. Maguire*, 79 Ala. 396; 10 Ala. 588. It is common knowledge, moreover, that any extra charge for delivery is always paid by the receiver of the message. (4.) The half-mile limit, if material, is to be measured by a straight line between the two points, or, at most, by the shortest accessible route.—*Leigh v. Hind*, 9 Barn. & Cr. 774. Measured by either standard, Dr. Rohmer lived within a half-mile of the station, though the indirect road generally travelled may have been longer. (5) The rulings of the court as to the measure of damages were correct.—1 Suth. Damages, 10, 156; Cooley on Torts, 67–8; 5 Amer. & Eng. Encyc. Law, p. 2, note 2; *Logan v. Telegraph Co.*, 84 Ill. 468; 59 Texas, 542; 66 Texas, 580; *Telegraph Co. v. Boone*, 46 Md. 344; Shear. & Redf. Negligence, 756; *Telegraph Co. v. Way*, 83 Ala. 555. (6.) Whenever the bodily or mental feelings of a person are material, the usual expressions of such feelings, made at the time, are original evidence.—Wood's Prac. Evidence, 417.

STONE, C. J.—St. Elmo and Grand Bay are two stations on the line of roads operated by the Louisville and Nashville Railroad Company. They are five miles apart, and are small villages. Louis Henderson resided near St. Elmo station, and Dr. Rohmer, his family physician, resided near Grand Bay station. At noon, June 26, 1887, Henderson procured to be dispatched at St. Elmo, to Dr. Rohmer at Grand Bay, a telegraphic message in the following language: "Come first train to see my wife; very low." This message was marked pre-paid, 25 cents. In addition, both the sender and

[Western Union Telegraph Co. v. Henderson.]

the telegraphic operator testified that that sum was prepaid. The operator testified, that Henderson inquired what the charge was, and, on being informed it was 25 cents, paid it to him. The message, though not repeated, reached the operator at Grand Bay, without mistake, and without delay.

Dr. Rohmer testified, that he received this telegram about 9 o'clock A. M., June 27, the day after its transmission; that it was handed to him at his residence, but he did not state by whom. He testified further, that if he had received the message on the 26th, he would have obeyed it, travelling either by train, or by private conveyance. He reached the patient about noon on 27th, and relieved the intensity of her suffering; but she died about six hours afterwards. He did not know whether, if he had reached her the day before, her life could have been saved. Plaintiff testified, that when the telegram was sent, his wife was suffering acutely, and that her suffering increased until the arrival of the doctor, when he alleviated it.

The present action was brought to recover damages for the non-delivery of said telegram within a reasonable time. The defendant interposed five pleas in bar, but, at present, we propose to consider only those on which issues of fact were formed. These are pleas 3 and 4. A demurrer was interposed by plaintiff to each these pleas, 3 and 4, and the demurrers were overruled. There was no error in this.

In the printed caption of all messages sent by the telegraph company, are certain conditions on which the company receives and transmits messages, and no message is received or sent, unless it is written on the company's blank, preceded by the conditions. The message in this case was written on the company's blank, and was preceded by the printed conditions. One of the conditions is, that "the company will not be liable for damages in any case, where the claim is not presented in writing within sixty days after sending the message." Plea No. 3 set up this condition, and averred that the claim here sued on was not presented to the company within sixty days after sending the message. To this plea plaintiff filed a replication, averring that, in less than sixty days after the message was sent, the present suit was brought, a complaint filed setting forth the claim of damages for non-delivery of the message, and service of a copy of the complaint on the defendant corporation—all within sixty days. To this replication the defendant demurred, and the court overruled its demurrer.

There are decisions which hold, that a suit setting forth the ground of complaint, instituted, and process upon it served within the sixty days, is not a compliance with this regulation.—*Wolf v. Wes. Un. Tel. Co.*, 62 Penn. St. 83; *Wes. Un. Tel. Co. v. McKinney*, 8 Amer. & Eng. Corp. Cas. 123. Snch regulation is generally held to be valid and binding.—*Grinnell v. W. U. Tel. Co.*, 113 Mass. 299; *Young v. Same*, 65 N. Y. 163; *W. U. Tel. Co. v. Rains*, 63 Tex. 27; *Fire Ins. Co. v. Felrath*, 77 Ala. 194. Our own rulings, on a question not distinguishable from this in principle, have been different.—*E. T., Va. & Ga. R. R. Co. v. Bayliss*, 74 Ala. 150; *S. & N. R. R. Co. v. Morris*, 65 Ala. 193; *Same v. Bees*, 82 Ala. 340. The Circuit Court did not err in overruling the demurrer to the replication to the defendant's third plea. The averments of that replication being unquestionably true, as shown by the record, that line of defense will receive no further consideration.

On the trial of this cause, the real controversy, both in fact and law, so far as the mere *right* of recovery was concerned, arose on the issue raised by the 4th plea. That plea sets up as a defense to the whole action, that the defendant corporation had established a limit within which it undertook to make free delivery of messages sent over its wires, which limit was a half-mile, or radius of a half-mile from its office, at places having the population that Grand Bay had; that in the said printed heading, which accompanied, and formed part and condition of every written message it received for transmission, including the one received in this case, was and is the following clause: "Messages will be delivered free within the established free-delivery limits of the terminal office; for delivery at a greater distance, a special charge will be made to cover the cost of such delivery"; and that Dr. Rohmer, to whom said message was sent, did not live within the said free-delivery limits of said office. The plea then avers that no consideration was paid or tendered by plaintiff for the delivery beyond the free-delivery limits, and no notice was given by the sender, nor did the telegraphic operator know, that Dr. Rohmer was not living within said limits. This plea was followed by much pleading, and many rulings of the court. We will not set out the various steps taken, but will declare the rules by which the relative duties of the parties must be determined.

Telegraphy is a quick-moving substitute for mail service, which, by contrast, has become tardy. Celerity is its boast,

and when rapid communication is desired, its instrumentality is invoked. It can not be presumed that the operator at the initial or receiving office will know every one to whom a message is proposed to be sent through his office, or will know that such person will be found within the free-delivery limits of the terminal office. The sendee may live just without the limits, or he may live miles away. Placing the duty on the sender, of ascertaining whether the person to whom the message is addressed resides within the free limits, is a reasonable rule. It is reasonable, because in most cases the sender will know where the sendee resides, and can inform the operator. In the event the sender does not know the residence or business office of the sendee, it is but reasonable to require him to inform himself, or to make provision for delivery beyond the limits, should it be found that the residence is beyond them. This is placing the duty where it is both reasonable and bearable, iustead of imposing an intolerable burden on the operator, or company. The reasons will suggest themselves without being stated. The rule is reasonable, and law is, or should be, reasonable.

When Henderson applied to have his message sent, if Dr. Rohmer lived more than a half-mile from the terminal office, he should have so informed the operator, if he knew it, or could learn it; and if he was in doubt whether the doctor lived within the limits, he should have informed the operator, and made provision for delivery beyond the limits, if he desired and expected prompt delivery. When a message is handed in for transmission, the presumption must be, and is, that the sendee lives within the limits of free delivery, or that the sender takes the risk of delivery, unless he makes arrangements for delivery at a greater distance. And handing in such message, without explanation, casts no duty on the transmitting operator, other than to forward the message accurately, and with proper diligence. And it casts no duty on the terminal employee, or operator, other than to copy the message correctly, and to deliver it with all convenient speed, if the sendee reside within the free-delivery limits.

What we have said is intended for the government of the senders of all telegrams, whether intelligent or non-intelligent. All men are conclusively presumed to know the law, and no discrimination between classes can be maintained, either by the law, or by sound reasoning. The principle rests on juridical necessity.

It may as well be stated here as any where else, that the plaintiff, when testifying as a witness for himself, stated that he knew the rule of the telegraph company, which guaranteed free delivery if the sendee lived within a half-mile of the terminal office, and no further. And the testimony of the sending operator tended to show that, before sending the message, he inquired of the plaintiff how near the terminal station or office Dr. Rohmer lived, and he answered "close by." Henderson gave no testimony in regard to this. No testimony was introduced tending to prove that any thing was said, either by Henderson or by the operator, having any reference to delivery beyond a half-mile. And we may here state, as proved and uncontroverted facts, that the charge, 25 cents, was pre-paid for sending the message, and that the plaintiff, Henderson, knew of the half-mile limit to free delivery.

The contested question of fact was, whether Dr. Rohmer's residence was within a half-mile of the terminal office. Witnesses testified that there was a travellable and travelled road, which cut off an angle, and brought the distance within a half-mile. Other witnesses controverted the existence of any road which cut off the angle and shortened the distance. According to their testimony, Dr. Rohmer's residence was not within a half-mile of the terminal office. This was a question for the jury, and, with a single exception, the Circuit Court submitted this question fairly to the jury. That question is the burden of proof.

Free delivery within a half-mile is not a restriction of a right, but a qualified privilege granted. It is not an inherent right; for, if it were, in the absence of restriction, it would have no limits. To show to what absurd results this would lead, let us suppose the contract to transmit a message is silent about free delivery. If we hold the clause in controversy to be restrictive of a right, then, in the case supposed, the telegraph company would be bound to deliver to the sendee, no matter how great the distance to his residence. Free delivery is a conditional obligation, contingent on the sendee's residence being with the area of free delivery; and until that condition is shown, the telegraph company is not put in default. The *onus* of proving that Dr. Rohmer's residence was within a half-mile was on the plaintiff. 3 Brick. Dig. 433.

Whether, in such a suit as this, damages can be recovered for mental anxiety, or mental distress, caused by the non-

delivery of the message through the negligence of the telegraph company, is a question upon which the authorities are in palpable conflict. They are not alone in conflict—they are widely variant. Some rulings reject such evidence, in all cases which are based on breach of contract. Others reject it when there is no element of recovery other than mental suffering, but receive it in aggravation, when there is another independent cause of action. On this last principle, a distinction is taken, in some cases, between suits in which the sender is plaintiff, and those in which the sendee complains. In the one case, the suit is by a party to the contract, who can maintain an action for its breach, even though he may be able to recover only nominal damages. In the other, there is no privity of contract, and there can be no recovery except for actual damages proved. There is, therefore, in this case, if the rule be sound, an independent right of recovery, to which distress of feeling becomes an aggravating incident. There are still other authorities which hold that such evidence is admissible on general principles, and as an independent ground of recovery. We cite many authorities, but will not attempt to reconcile them. Nor will we comment on them further.—*Wadsworth's Case*, 6 S. W. Rep. 864, and 8 S. W. Rep. 574 (Tenn.); *R. R. Co. v. Levy*, 59 Tex. Rep. 542; *Same v. Same, Ib.* 563; *Stuart's Case*, 66 Tex. 580; *Relfe's Case*, 55 Tex. 308; *Hays R. R. Co.*, 46 Tex. 272; *Simpson's Case*, 11 S. W. Rep. 385; *West's Case*, 7 Amer. St. Rep. 534-5, note; Shear. & Redf. Neg. § 756; 5 Amer. & Eng. Encyc. 42, note; *Logan's Case*, 84 Ill. 468; *Turnpike Co. v. Boone*, 45 Md. 344; *Walsh v. Railway Co.*, 42 Wis. 23; *West's Case*, 39 Kans. 93; *Russell's Case*, 3 Dak. 315. The case of *W. U. T. C. v. Cooper*, 9 S. W. Rep., is a very peculiar one.

As to the element of mental anguish claimed to have been suffered by the plaintiff, we think it the proximate consequence of the failure to deliver the message, and that the perusal of the message would naturally suggest such consequence, as likely to ensue from the non-delivery. The right of the plaintiff to sue for the breach of the contract to deliver, if within the free-delivery distance, takes this case out of the rule, if a sound one, that mental distress will not maintain the suit, when there is no other element of recoverable damage. We find no error in the rulings as to the proper elements of damage; and we agree with the Circuit Court in holding that there was no proof which authorized exemplary or vindictive damages.

In the light of the principles declared above, some portions of the general charge, which we have not referred to specially, and the charge given at the instance of the plaintiff, are subject to criticism; but we deem it unnecessary to comment further upon them. What we have said will furnish the proper correction. The 9th charge asked by defendant ought to have been given.

The message, for the failure to deliver which the present suit was brought, was not a repeated message. Pleas were interposed, and charges were asked, based on stipulations in regard to non-repeated messages, as set forth in the printed caption attached to the form, or blank, on which the message was written. The message, though not repeated, was correctly and without delay transmitted to the terminal office, and was there understood and copied accurately. This answered all ends repeating could have accomplished, and leaves that clause without practical operation in this case. None of the provisions, intended to be restrictive of liability on non-repeated messages, and none of the stipulations for exemption from the consequences of negligence, have any proper consideration in the determination of this case. *W. U. Tel. Co. v. Way*, 83 Ala. 542; *White's Case*, 14 Fed. Rep. 710; *Tyler's Case*, 74 Ill. 168; 3 Suth. on Dam. 296-7. The demurrers to pleas 2 and 5 were properly sustained, and all charges seeking to raise the questions presented in those pleas, were properly refused.

The attempt was made in the trial court to excuse the telegraph company from liability for non-delivery of the message, on the ground that the business and emoluments of the office at Grand Bay were insufficient to justify the employment of a separate telegraphic operator, or a messenger boy to deliver messages. *Belun's Case*, 8 Cen. Law Journal, 445, is relied on in support of this position. This may furnish a very good reason for withholding telegraphic service, or, perhaps, for different regulations in regard to delivery, at places thus circumstanced. It affords no excuse for violating the terms of a contract. We can not follow *Belun's Case*.

The defendant offered to prove in defense that it was not the custom of Dr. Rohmer to make professionals calls at a distance, without pre-payment, or guaranteed payment of his charges. This testimony, on objection, was ruled out. There was no error in this. If the doctor lived within the area of free delivery, it was not for the telegraphic operator

[Elyton Land Co. v. Mingea.]

to speculate on the chances that the summons would, or would not be obeyed. If it had been shown that Dr. Rohmer would not have obeyed if he had received it, this, it would seem, would have proved that the plaintiff suffered no real injury from the failure to deliver the message. So far from this being proved, Dr. Rohmer testified that, if he had received the message, he would have obeyed the call.

The natural utterances and expressions, indicative of pleasure, displeasure, pain or suffering, are competent, original evidence, that may be received in proof of the physical or mental state they indicate, whenever that state is a pertinent inquiry.—Wood's Prac. Ev. § 147.

Two parts of the testimony received at the instance of plaintiff should have been rejected: first, the answer of the operator at Grand Bay, made on 27th, in reply to plaintiff's inquiry, why the message had not been delivered; and second, that the Western Union Telegraph Company was a wealthy corporation.

We have now noticed every material question raised by the record.

Reversed and remanded.

