## HOOD v. TELEGRAPH CO.

(Filed May 27, 1904).

1. NONSUIT—*Dismissal—Judgment—Actions—Limitations of Actions.*

Where a nonsuit is granted upon a demurrer to the evidence, a new action may be brought within one year.

2. TELEGRAPHS — *Negligence — Free Delivery Limits — Mental Anguish—Damages.*

Where a telegraph company failed to make any attempt to deliver a message because the sendee lived beyond the free delivery limits and also failed to notify the sender of additional charges for such delivery, or of refusal to deliver it at all, the company is liable for damages resulting from its negligence in failing to make the delivery.

ACTION by S. L. Hood and wife against the Western Union Telegraph Company, heard by *Judge T. A. McNeill* at March Term, 1904, of the Superior Court of MECKLENBURG County. From a judgment for the defendant the plaintiffs appealed.

*Maxwell & Keerans,* for the plaintiffs.
*F. H. Busbee & Son,* for the defendant.

CLARK, C. J. The evidence is that the male plaintiff, at the request of the *feme* plaintiff, his wife, and for her use and benefit, delivered to the telegraph operator in Charlotte at 7 A. M. April, 1900, the following prepaid message to be transmitted to Concord, N. C., to W. M. Petrea, the father of the *feme* plaintiff: "Come at once. Baby is sick." The child was very ill, and the object of the message was that the *feme* plaintiff's father and mother might come to Charlotte to comfort and assist her. The telegraph operator

was told that the child was very ill and that the message should be sent at once, and he promised that it should be. The sendee lived seven or eight miles from Concord, but was well known at that place. It was the first message ever sent by the plaintiffs and they knew nothing about free delivery limits, and, this being the nearest telegraph station to the sendee, supposed the message would be delivered. The operator, neither at Charlotte nor Concord, made any objection, nor informed the plaintiff of any hesitancy or difficulty in delivering, and the plaintiffs supposing the message had been delivered expected and looked for the arrival of the plaintiff's mother and father till midnight. The child died at 4 o'clock that afternoon. If the defendant had advised the senders that an additional sum would be required before delivery it would have been paid; or if advised promptly that the defendant would not deliver it at all, the plaintiffs would have made other arrangements to notify Petrea and wife, and that Petrea and wife would have come to Charlotte that day if he had received the message, and would have paid any extra charges demanded if the telegram had been delivered to him. Such is the substance of the evidence.

It was further in evidence that it was the general custom of the telegraph company at Concord *either* to allow its messenger boys to deliver messages out in the country and collect from sendees, *or* to wire back to the sending office the additional charges for such delivery and to advise the sender what such charges would be. The evidence is that if either course had been pursued the sender and the sendee (as the case might be) would have paid the charges. It was also in evidence that the office in Concord frequently did deliver or allowed its messenger boys to deliver messages out in the country, outside of Concord, without charges being prepaid when they thought the sendee would pay the charges.

and when in doubt about this the Concord operator always advised the sending office that the sender should be notified what such charges would be; that the Concord office had frequently sent such messages out in the country by N. J. Corl, a liveryman, and he had often collected the extra charge without prepayment being guaranteed; that if the message had been handed to Corl he would have delivered it to Petrea without prepayment being guaranteed by the defendant; that a similar custom of delivery outside of free delivery limits also prevailed in Charlotte; that the plaintiffs had lived in Charlotte two years prior to sending this message, their mail being delivered daily by the post-office carrier; that the messenger boy in Charlotte on duty that day knew where the plaintiffs resided, but the defendant made no inquiry of him nor made any effort to notify the plaintiffs of the non-delivery of the message, nor of any doubt or hesitation as to delivering it to the sendee; that they had no relatives in Charlotte to assist them in preparing their child (who was their eldest and only child) for burial, and deciding to carry the body to the *feme* plaintiff's father's home for burial on the next morning (Monday), at 7 A. M., the male plaintiff at the request of and for the use and benefit of his wife, the female plaintiff, delivered the following prepaid message directed to James Dry at Concord: "Tell Mr. Petrea to meet corpse on train No. 36. Have some one to dig grave"; that this message was sent in order that the plaintiffs *might be met by some one in Concord* on the arrival of said train, either by Petrea or some one else, so that the male plaintiff might not have to leave his wife with the corpse and go out to procure a team to carry them into the country; that when he prepaid the message the husband of the *feme* plaintiff told the operator in Charlotte where Dry resided in Concord, and the operator promised to forward the message at once; that relying on such

promise they went to Concord with the child's body on train No. 36, but no one met them on arrival; that the male plaintiff had to leave his wife with a relative and go out to procure a conveyance; that the train arrived at Concord at 11 A. M. but the message was not delivered to Dry till 10 A. M. (three hours after its delivery to the defendant's agent in Charlotte), being too late for him to notify Petrea in time for the latter to have some one to meet the plaintiffs on arrival of the train, which he would have done if the message had been delivered promptly to James Dry, who would at once have sent it to Petrea, and could have done so in an hour, and that it could have been delivered to Dry in twenty minutes after its receipt at the Concord office; that when Petrea got the message the conveyance was started off in a few minutes to meet the plaintiffs, but too late; that on Monday, after the second message was delivered to the defendant, the plaintiffs, in reply to their inquiry, were for the first time informed that the prior message had not been delivered because Petrea lived seven miles in the country, and a postal card had been put in the post-office to advise him, but no such card was ever delivered; that the *feme* plaintiff suffered much grief by the failure of her mother and father to come to Charlotte on Sunday's train, as they would have done if the telegram had been delivered according to the defendant's custom, or if non-delivery had been at once notified to the plaintiffs, so that they could (as they would) have secured delivery by other means, and also by the failure to meet her at the train on the arrival of the body, and her husband under those circumstances having to leave her to go out to procure a conveyance.

There was no evidence offered by the defendant. It was error to nonsuit the plaintiffs upon this testimony. It is clear, beyond controversy, that the defendant was guilty of very great negligence, and no one of the slightest sensibility

135——40

will deny that the probable result would be, and was, need-less grief and mental suffering in consequence inflicted thereby upon the *feme* plaintiff. What would be a just compensation, if any, is a matter which can be settled only by a jury, whose verdict if excessive is subject to the power of the Court to be set aside. It may be that the defendant's evidence may establish a different state of facts materially mitigating the plaintiffs' *prima facie* case or defeating it entirely. But the legal propositions involved, establishing a *prima facie* right in the *feme* plaintiff to recover, are so clearly settled as to require no discussion. Among the cases exactly in point is *Hendricks v. Telegraph Co.,* 126 N. C., 311, 78 Am. St. Rep., 658, in which it is said: "We think it is the duty of the company in all cases where it is practica-ble to do so to promptly inform the sender of a message that it cannot be delivered. While its failure to do so may not be negligence *per se,* it is clear evidence of negligence. In many instances by such a course the damage could be greatly lessened, if not entirely avoided; a better address might be given, mutual friends might be communicated with or even a letter might reach the addressee. In any event, the sender might be relieved from great anxiety and would know what to expect. Moreover, it would tend to show diligence on the part of the company." This language is approved in *Laudie v. Telegraph Co.,* 126 N. C., 431, 78 Am. St. Rep., 668; *Hinson v. Telegraph Co.,* 132 N. C., 467.

"It may be further noted that the company does not say that the message will not be delivered beyond such limits, but that a special charge will be made to cover the cost of delivery, which seems to clearly imply that it would be delivered. No fixed limit of distance nor definite sum is specified, and it is difficult to say how the sender can be presumed to know either in the absence of information from

the company." *Hendricks v. Telegraph Co., supra; Bryan v. Telegraph Co.,* 133 N. C., 605.

"The failure of the telegraph company to deliver a message is not excused, though it appear that the sendee lived beyond the free delivery limits and the extra charge for delivery beyond the limits had not been paid; it not appearing that the sender knew the company had any free delivery limits, or that it demanded payment of an extra charge." *Bright v. Telegraph Co.,* 132 N. C., 317.

The plaintiff's action was dismissed for lack of sufficient evidence on a former trial and a new action was brought. A new action may be brought in such cases (*Prevatt v. Harrelson,* 132 N. C., 254; *Evans v. Alridge,* 133 N. C., 380; *Nunnally v. Railroad,* 134 N. C., 755, and other cases, at this term) provided the new action is brought (as here) within one year. *Meekins v. Railroad,* 131 N. C., 2.

New Trial.

(WALKER, J., did not sit on the hearing of this case).

MONTGOMERY and CONNOR, JJ., concur in result.