# Western Union Telegraph Co *v.* Snell.

### *Damage for Failure to Deliver Telegram.*

(Decided Nov. 23, 1911.   Rehearing denied Dec. 14, 1911.
56 South. 854.)

1. *Pleading; Complaint; Construction.*—Words used will be given their ordinary import unless they possess some peculiar, technical meaning, as the statute requires a cause of action to be stated in plain language; hence, technical objections not going to the merits of the cause of action will be disregarded.

2. *Telegrams and Telephones; Delivery of Message: Delay; Negligence.*—The evidence in this case stated and examined and held to require a submission of the issues of the negligence of the defendant to the jury.

3. *Same; Complaint.*—A complaint charging that the plaintiff paid the defendant its charge for sending a message to J. at Altoona, Ala., route 1, that defendant broke the contract in that it negligently failed to transmit the message to J., at the address given in the message, was not demurrable as showing an undertaking to transmit and deliver the message to route 1, and in failing to allege that the message was not promptly transmitted to that route.

4. *Same; Delivery; Delay.*—Where a telegraph company accepts a death message addressed to a particular person on a particular rural route, and the sender offers to pay any additional charges for messenger service, it is not a defense for defendant's delay in delivering the message that it might have refused to have accepted the message because of the residence of the addressee.

5. *Same; Free Delivery Limit; Evidence.*—Where there was no evidence that the contract for the transmission of the death message contained any stipulation with reference to free delivery limit, and the defendant was informed of the importance of the message and of the sender's willingness to pay all extra charges necessary to its reasonably prompt delivery, it was not error to refuse to permit evidence that the addressee did not live within the free delivery limits of the city to which the message was addressed.

6. *Same; Negligence; Evidence.*—Where a death message which was sent only a short distance did not reach the addressee until

nearly six days after it had been sent him, and was then received from his wife, who had received it from the mails, such facts were sufficient to raise an inference that the defendant was negligent in delivering the message.

7. *Same; Delay in Delivery; Presumptions.*—Where both the addressees of the death messages were so situated that at little expense they could have attended the funral of thir mother of whose death they were advised by. the message, if they had received it within a reasonable time, the jury were authorized to infer that they would have done so.

8. *Same.*—Where the addressees of a death message received it through the mails some six days after it had been filed for tranmsission, it will be presumed that the post office authorities transmitted the message with reasonable promptness immediately after receiving it.

9. *Same; Delay in Delivery; Mental Anglish.*—Where the plaintiff, on the death of her mother promptly sent telegrams to her brother and sister announcing the time of the funeral, but they did not attend because of the negligent delay in transmitting and delivering the message, plaintiff was entitled to recover mental anguish as part of the damage.

10. *Same; Damages; Pleading.*—Where the action was to recover damages for a breach of two contracts for transmission and delivery within a reasonable time of two death messages, and in each count it is alleged that plaintiff paid the defendant the charge for sending the message, and that it negligently failed to transmit and deliver the same, plaintiff became entitled to recover under the general claim of damages, the charges paid, and defendant could not object to an award of mental damages on the theory that there was no claim for actual damages.

11. *Charge of Court; Oral Charges; Construction.*—The oral charge must be construed as a whole, and if, when so construed, it contains a correct statement on the law applicable to the case, the judgment will not be reversed because a separate part of the charge standing alone and unexplained, is erroneous.

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Action by Emma Snell against the Western Union Telegraph Company, for damages for delay in the delivery of two death messages. Judgment for plaintiff and defendant appeals. Affirmed.

GOODHUE & BLACKWOOD, for appellant. Counsel discuss rulings on the pleadings, but without citation of authority. They insist that they should have been permitted to show the free delivery limits of Alabama

City.—27 A. & E. Enc. of Law, 1029; *W. U. T. Co. v. Ward*, 23 Ind. 377. *W. U. T. Co. v. Reddinger*, 22 Tex. Civ. 223. The court erred in refusing charges 16 and 19.—*W. U. T. Co. v. Crowder*, 48 South. 381; *W. U. T. Co. v. McMorris*, 48 South. 349. Charges 17 and 18 should have been given.—*W. U. T. Co. v. Benson*, 48 South. 712. Counsel insist that under the evidence no actual damages were claimed, and therefore, there was no right of recovery for mental anguish.—*W. U. T. Co. v. Wright*, 169 Ala. 107. Counsel discuss the other assignments of error relative to the charges given and refused, but without citation of authority.

BILBRO, INZER & STEPHENS, for appellee. The court properly overruled the demurrers to count 2.—*W. U. T. Co. v. Crumpton*, 138 Ala. 522. What the free delivery limits were in Alabama City was irrelevant.—*W. U. T. Co. v. Merrill*, 144 Ala. 618; *Same v. Whitson*, 145 Ala. 426. Charges 11, 14, 20, 21 and 22 were properly refused, because they were either covered by charges given or else exacted a too high degree of proof.—*Coghill v. Kennedy*, 119 Ala. 666; *U. S. F. Co. v. Charles*, 131 Ala. 658; *L. & N. v. Sullivan*, 126 Ala. 103. The place of performance of appellant's contract was the place of delivery.—7 A. E. Ann. Cases, 1065. The presumption is, that they would have attended the funeral, and it is also presumed that the government promptly delivered the mail soon after its filing.—*W .U. T. Co. v. McMorris*, 48 South. 349; *Same v. Crowley*, 48 South. 381. The delivery to the wife is not a compliance with the contract.—40 L. R. A. 209. Counsel discuss other assignments of error, but without further citation of authority.

DE GRAFFENRIED, J.—This suit was brought by appellee against appellant for damages for the breach

of two contracts for the transmission and delivery, within a reasonable time, of two telegrams, one to a sister and the other to a brother of appellee.

Appellee lived in the country about five miles from Altoona, a station on the Louisville & Nashville Railroad. Her sister, Annie Harris, to whom one of the telegrams was sent, lived on the same railroad at Alabama City, 18 miles from Altoona, and between the two places there were two passenger trains going each way daily, one in the morning and the other in the afternoon. Billy Jones, the brother, to whom the other telegram was sent, lived about three miles from Ensley on rural free delivery mail route 1. Alabama City is a cotton mill town, which is a suburb of Gadsden, and which appears not to be of sufficient commercial importance for the appellant to maintain a telegraph office there. Telegrams over the lines of the Western Union Telegarph Company to Alabama City are sent to Gadsden, and telephoned from Gadsden over to the agent of appellant at Alabama City. Ensley is a suburb of Birmingham, and is easily accessible by rail from Altoona.

On the night of October 28th the mother of appellee died at her residence, and as appellee desired her said sister and brother, who were also children of the mother, to be informed of their mother's death, in order that they might be present with her at the funeral, she telephoned on the night of the 28th to a friend of hers in Altoona, directing him to send telegrams to her brother and sister, informing them of their mother's death, and requesting them to come to her funeral. It appears that appellant keeps no night office at Altoona, and on the next morning, at 7:20 a. m. appellant's agent appeared at the office of appellant in Altoona, and deliv-

ered for transmission and delivery two telegrams as follows:

"Altoona, Ala. 10-29-07. Billy Jones, Ensley, Route 1. Come if possible. Mother died at eight last night. Emma Snell."

"Altoona, Ala. 10-29-07. Annie Harris, Alabama City, Ala. Come if possible. Mother died last night. Emma Snell. Time filed 7:20 a. m. O. K. H-3-3 p. m."

The words "Time filed 7:20 a. m." on the Annie Harris telegram meant that the message was received for transmission at 7:20 a. m. at Altoona, and the words "O. K. H-3-3 p. m." referred to the time when that message was received by the agent at Alabama City, as the agent at that place testified that he received it at that hour on that day. At the time the message was delivered for transmission, the agent of the appellant was informed that Billy Jones lived near Ensley on rural free delivery mail route 1, and, when the messages were delivered for transmission, to use the language of the witness who signed the telegrams for appellee: "I told the agent, Mr. Brown, I wanted him to send the telegrams, and, if there was any extra charges, I wanted to pay them as I had been requested so to do. He said, 'All right,' and went to working on the wire. The charge for each message was 25 cents."

1. As Alabama City is only 18 miles from Altoona, it is evident that in the ordinary course of business the telegram to Annie Harris should have reached that place at a much earlier hour of the day than 3 p. m. Why it did not sooner reach there the evidence fails to disclose. When it did reach Alabama City, the agent of appellant, who testified that he did not know where Annie Harris lived, first consulted the pay roll of the Dwight Cotton Mill, which seems to have contained the names of about 1,000 employes. Not finding the

name on the pay roll, he went to the commissary of the Dwight Cotton Mill, and made inquiries about her at that place, and learned there nothing of her or of her place of residence. He then went to the postoffice, and made inquiries there, with the same result. This was the extent of his efforts to locate the woman, and on the next day he mailed her the customary notification card that a telegram was at his office for her. The evidence shows, without conflict, that Annie Harris had been a resident of Alabama City for nine or ten years; that she had a husband and children; and that one of her children was a grown man, who was at that time employed by, and working for, the Dwight Cotton Mill with his name on the pay roll. A messenger, using some primitive method of conveyance, leaving Altoona at 7:20 a. m. could have reached Alabama City, with the exercise of ordinary diligence, prior to 3 p. m., and, if his day's wage had depended upon the delivery of the message to Annie Harris at her residence in Alaama City on that day, we are inclined to think that he would have exercised more diligence than is shown to have been exercised by the agent of appellant in his efforts to deliver the telegram to her after its receipt by him. Certainly it was a question for the jury to say, under all the evidence, whether, taking into consideration the importance of the message, the agent of appellant, in and about the delivery of the telegram, exercised that reasonable care and diligence which a man of ordinary prudence would have exercised under similar circumstances. By reason of the delay in the delivery of the message, Annie Harris was not informed of her mother's death until after the funeral, and, not knowing of her death, did not attend the funeral.—*E. Tenn. Va. & Ga. R. R. Co. v. Bayliss,* 74 Ala. 150.

2. The law requires a plaintiff in his complaint to state in plain language the facts upon which he relies

for his cause of action. In considering the complaint, the words used, unless they possess some peculiar technical meaning, will be given their ordinary import, and strictly technical objections, not going to the merits of the cause of action, will be disregarded. The law is reasonable, and all that it requires of a complaint is that it shall state in plain and simple language a legal cause of action, and inform the defendant as to what is claimed.

The third count of the complaint, after setting out the above telegram to Billy Jones, contains the following averment: "That plaintiff paid the defendant charges for sending the said message from Altoona, Ala., to said Billy Jones at Ensley, Ala., route 1; that defendant broke said contract, in that it negligently failed to transmit and deliver said message to said Billy Jones at the address given in said message." Appellant demurred to said count upon the following grounds: "Said count shows that the undertaking of defendant was to transmit and deliver from Altoona, Ala., to route 1, at Ensley, Ala., and said count fails to show that said message was not promptly transmitted to route 1, Ensley, Ala." As a matter of pleading, the complaint met every requirement of the law. The appellant undertook to transmit and deliver, by the acceptance of said message, within a reasonable time, the said message to Billy Jones, route 1, Ensley, Ala. Whether, if the proof had shown that the appellant had promptly transmitted the message to Ensley and there promptly delivered it to the United States mails addressed to Billy Jones, route 1, Ensley, Ala., the appellant would thereby have shown that it exercised in and about the delivery of the message to Billy Jones that diligence which the law required of it, is not presented by the pleading or the evidence in the case.

The fact that Billy Jones did not reside in Ensley, but resided on route 1, near Ensley, might have furnished appellant with the right to refuse to accept messages to be delivered to him at that point, but it did not afford it an excuse for violating the express terms of a contract.—*Western Union Telegraph Co. v. Henderson,* 89 Ala. 520, 7 South. 419, 18 Am. St. Rep. 148.

There is nothing in the contention of appellant that the court erred in refusing to allow it to give in evidence the fact, if it was a fact, that Annie Harris did not live within the free delivery limits of Alabama City. While the record discloses the fact that the telegrams were sent upon the blanks of appellant, it fails to show that there were any stipulations in the forms used in sending the messages with reference to free delivery limits. In addition to this, the evidence shows that, when the telegrams were delivered to appellant, it was informed as to the importance of the messages, and that appellee was willing to pay all extra charges necessary to their reasonably prompt delivery.—*Western Union Tel. Co. v. Henderson,* 89 Ala. 510, 7 South. 419, 18 Am. St. Rep. 148.

4. There is nothing in the record tending to show what, if anything, the appellant did to deliver to Billy Jones the telegram addressed to him. It seems to have reached him about six days after it was sent to him from Altoona. When it was received at Ensley the record does not inform us. Neither are we informed as to when it was finally mailed to him. All that we know about the delivery of this telegram is that it was handed to him by his wife at his home on the Monday succeeding his mother's burial; that he had never heard of the telegram prior to that time; and that it indicated that it had been in the mails. It is therefore evident that the jury were authorized to infer that appellant

was negligent in the matter of the delivery of said telegram to him.

5.  Appellee's mother was buried two miles from Altoona on Wednesday afternoon succeeding her death, and, as appellee's sister and brother knew nothing of the funeral, appellee was denied the comfort of their presence when her mother was a corpse at her house, and when she was buried. As both the sister and the brother were so situated that, at little expense, they could have attended the funeral of their mother, if they had received the messages announcing her death within a reasonable time after their delivery for transmission to appellant, the jury were authorized to infer that they would have done so, and there is nothing in the record indicating that they would or could not have done so. It follows, therefore, that the jury were authorized to infer from the evidence that appellee was denied the comfort of their presence at the time above stated.— *Western Union Tel. Co. v. Crmupton,* 138 Ala. 632, 36 South. 517; *Western Union Tel. Co. v. Crowley,* 158 Ala. 583, 48 South. 381.

6.  There is no conflict among the authorities that mental suffering constitutes an element of recoverable damages for the breach by a telegraph company of a contract to transmit, within a reasonable time, a message from a sister or brother to a sister or brother announcing the death of the mother, and when by reason of such breach, the sister or brother, to whom the telegram is sent, is thereby prevented from attending the funeral and the sender of the telegram is thereby denied the consolation of such brother or sister's presence at the funeral.—*Western Union Tel. Co. v. Crumpton,. supra.*

7.  The oral charge of a court must be construed as a whole, and a judgment will not be reversed because a

separate part of a charge standing alone and unexplained is erroneous, if the charge, construed as a whole, contains a correct statement of the law as applied to the facts of the case.

While a few of the expressions of the court in its oral charge to the jury in this case, taken separately may have been subject to hypercriticism, the oral charge, as a whole, was a correct statement of the law as applied to the facts of the case.—*Decatur Co. v. Mehaffey*, 128 Ala. 242, 29 South. 646.

There is no error in the record, and the judgment of the court below is affirmed.

Affirmed.

### On Application for Rehearing.

In its application for a rehearing the appellant, among other things, says: "The Court of Appeals overlooked the fact that each count in the complaint failed to claim any actual damages to plaintiffs' estate and failed to claim even the price paid for the transmission and delivery of the message, and that, therefore, under the authority of *Western Union Telegraph Co. v. Wright*, 169 Ala. 107 [53 South. 95], the plaintiff was not entitled to recover at all for mental anguish." In the opening part of the opinion in this case, we called attention to the fact that this suit was brought for damages for the breach of two contracts for the transmission and delivery within a reasonable time of two telegrams, one to a sister and the other to a brother of the appellee. In each count of the complaint it is alleged that the plaintiff paid the defendant the charges for sending the said messages, and that it broke the contract, in that it negligently failed to transmit and deliver the messages. Under the general claim for damages in each count of the complaint, the amount paid for the messages was recoverable.

In the case of the *Western Union Telegraph Co. v. Wright,* 169 Ala. 107, 53 South. 95, the Supreme Court, in the opening part of its opinion, says as follows: "The first count of the complaint was in tort, and claimed damages only for mental suffering. There was no claim for actual damages to the plaintiff's estate—nothing upon which damages for mental suffering could be predicated. Therefore damages for mental anguish could not be recovered under said count, and, as it was only for mental anguish, it did not state a cause of action." It is therefore evident that the rule announced in *W. U. Tel. Co. v. Wright, supra,* an action in tort, has no applicability to this suit, which is an action for the breach of a contract.

2. The evidence, as shown in the bill of exceptions, shows, without conflict, that Billy Jones, to whom one of the telegrams was sent, did not receive the telegram until about six days after it was delivered to appellant for transmission and delivery to him. Billy Jones lived about three miles from Ensley, on R. F. D. route; and appellant was informed of that fact when the message was delivered to it for transmission and delivery, and was also informed that appellee was willing to pay any extra charges incurred by appellant in delivering the message to him. We are not called upon to decide, and we do not decide, whether the contract contemplated that the telegram should be transmitted to Ensley and there mailed to Billy Jones, R. F. D. No. 1. When the telegram was received by Billy Jones, it came through the mails, but he testified that he was on a daily mail route, and that the mail was brought to his house each day at from 3 to 4 o'clock, that while he was not at home every day he was at home every night and morning, and that he never heard of the telegram until his wife gave it to him about six days after it had been de-

18 CA

livered to appellant as above stated. He was not able to say from his own personal knowledge when his wife received the message, but he was able to state that he had looked in his mail box between the time when the message was deliverd to appellant and the time when it was delivered to him by his wife, and that the telegram was not in the box.

Jurors in trying a case are not expected to weigh the evidence with that hypercriticism with which trained lawyers are sometimes accustomed to weigh it, but they are authorized to weigh it in the light of human experience and observation. In our opinion the jury were authorized to infer, taking into consideration their knowledge of human affairs, and the customs existing in families, that the wife of Billy Jones, when she obtained so important a message as the one under discussion from the mail box, delivered it to her husband with promptness, and that the message was not in fact received at Billy Jones' house, through the mails, until the day on which she delivered it to her husband. They were also authorized to presume that the postal authorities, when they received the telegram in the mails for transmission to Billy Jones, transmitted it with reasonable promptness.

We are therefore of the opinion that the testimony of Billy Jones authorized the jury to infer that the appellant was negligent in and about the delivery of the telegram to him, and, in the absence of any evidence on the part of the appellant showing what it did with the telegram, that they were authorized so to find by their verdict.

Application overruled.