GEORGE W. SMITH v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 31 March, 1915.)

1. Telegraphs—Delivery Limits—Service Message—Extra Charge—Refusal of Sender to Pay or Guarantee—Sender's Instructions.

Where the sendee of a telegram announcing the death and time of burial of a deceased person is beyond the reasonable free-delivery limits of the telegraph company, at the terminal office, in this case 3 miles, it is the duty of the agent of the company, upon ascertaining the fact, to wire the information back to the sending office, where the sender should be so notified, with request for guarantee or payment of the special charges required for the extra service in delivering the message; and when the sender refuses to do so, but instructs that the message be mailed from the terminal office to the addressee, which is accordingly done, and this alone causes the addressee to arrive too late for the funeral, the latter may not recover actual or compensatory damages, in his action against the company, for his inability to have been then present.

2. Same—Conflicting Evidence—Sender's Statement—Impeaching Evidence.

Where the agent of the sender of a message has been notified that the sendee was beyond the free-delivery limits of the telegraph company's terminal office, in accordance with information given in a service message sent from that place, and the evidence is conflicting as to whether he guaranteed the extra charge required for its delivery or instructed that the telegram be mailed to the addressee from the terminal office; and he has testified that he had sent two messages to different people, and that he had given these instructions about the other message, it is competent, as tending to contradict his testimony, to introduce as evidence his written statement previously given, that he had been notified that the message in question had not been delivered for the reasons stated; that the addressee was not expected to come; and that the company was not to blame, as it had followed his instructions in mailing the telegram.

APPEAL by defendant from *Cooke, J.*, at September Term, 1914, of CUMBERLAND.

This action was brought to recover damages for failure to deliver a message, addressed to plaintiff at Fayetteville, N. C., by his sister, Mrs.

H. C. Freeman, at Lumberton, N. C., at 11:30 a. m. on 8 May, 1913, in the following words: "Mother died yesterday. Buried this afternoon." It is admitted by the defendant in its brief that there was some evidence of negligence, sufficient to carry the case to the jury. Plaintiff did not reside in Fayetteville, but 3 miles from there, in the country. The operator received the message, copied it, and delivered it to the messenger at that office, who searched for G. W. Smith and could not find him, but was told that he lived at Victory Mills, 3 miles away, whereupon he attempted to call him over the phone, but failed to reach him. He returned the message to the operator, who sent a service message to the operator at Lumberton, informing him of the facts, and asking for a guarantee of 75 cents for special delivery charges beyond the free-delivery limits. The operator at Lumberton, S. H. Hamilton, carried the service message to the sender's husband and agent, H. C. Freeman, who originally delivered the message for transmission, and asked him if he would guarantee payment of the extra charge for the special service in delivering outside of Fayetteville, which he refused to do, but directed Hamilton to request the operator at Fayetteville to mail the telegram to G. W. Smith, which was done, and the latter received the message by mail the next day, but after the funeral, which took place at 5 o'clock p. m. on the day the first message was sent. H. C. Freeman, witness for the plaintiff, admitted the conversation with Hamilton about the telegram, but afterwards stated that he did not know what was said by them, though he denied having refused to pay the charge for extra service in making a special delivery of the message beyond Fayetteville, and stated that he would have paid it if he had been asked to do so. In order to contradict him, defendant offered as evidence the following written statement made by Freeman on the day of its date:

"LUMBERTON, N. C., 15 May, 1913.

"This is to certify that I (H. C. Freeman), on 8 May, 1913, about 11:30 a. m., filed a telegram at the Western Union Telegraph office at Lumberton, N. C., for my wife (Mrs. H. C. Freeman), addressed to G. W. Smith, Fayetteville, N. C., reading as follows:

" 'Mother died yesterday. Burial this afternoon.'

"Manager Hamilton, who wrote the message for me, asked me if I could give some address at Fayetteville, and I told him that I knew no other or better address. Mr. Hamilton notified me in person, about 1:50 p. m., that the message was undelivered; that Mr. Smith lived 3 miles in the country, and that it would cost 75 cents to have it delivered. I told Mr. Hamilton to have them mail a copy; that we did not expect him to attend the funeral anyway. (We lay no blame on the part of the telegraph company at all, as they did as instructed by us. We sent the mes-

sage to -Mr. G. W. Smith as a matter of respect, and we did not expect him to attend the burial, as interment was made before the arrival of any of the afternoon trains. We regret very much that Mr. Smith has taken such action against the telegraph company, and if he is suing for mental anguish, we feel sure that he is going to have a very difficult job proving it.)"

Plaintiff objected to the part in parentheses, which was excluded by the court, and defendant excepted. There were other exceptions to rulings of the court and the charge, but it is not necessary to state them. The jury found for the plaintiff, and defendant appealed from the judgment upon the verdict.

*Robinson & Lyon* for plaintiff.
*Rose & Rose and George H. Fearons* for defendant.

WALKER, J., after stating the case: If the defendant's witnesses testified truthfully in this case, the defendant performed its duty and is not liable to the plaintiff for anything. It transmitted the message promptly from Lumberton to Fayetteville, caused search to be made for the sendee at that place, and, failing to find him, used the telephone unsuccessfully for the purpose of communicating with him. It then wired back to the sender for payment or a guarantee of the charge of 75 cents for the extra service in delivering beyond the place to which the message was addressed. So far, it was within its rights, and there was full compliance with a correct performance of its duty, and the case turns, at this point, upon the question whether H. C. Freeman did or did not refuse to pay the charges. His testimony as to the conversation with Hamilton was not very consistent, and it became important to the defendant that every piece of evidence fairly tending to impair his credit should be considered by the jury. The portion of his written statement, which he had before deliberately made, was excluded by the court, for what reason we are not advised. It clearly tended to contradict him in respect to this vital matter. Surely this admission, in the excluded part of the statement, had that tendency, viz., "We lay no blame on the part of the telegraph company at all, as they did as instructed by us," and we also think that the whole letter should have gone to the jury. 1 Elliott on Evidence, sec. 241; *Spencer v. Fortescue,* 112 N. C., 268. The part which was excluded was very material as tending directly to show that the company had acted solely under Freeman's directions in regard to handling the message, and was therefore not guilty of any negligence in failing to deliver it on the day it was sent, and, besides, it had an important bearing upon another phase of the case, in that it tended to show that the conversation between Free-

man and Hamilton, near the postoffice, related to this particular mes-
sage and not to the one sent to a Miss Smith in Georgia, as Freeman
testified that he thought Hamilton was referring to the latter one. When
recalled, he testified: "I do not really know under what circumstances
I authorized the telegraph company to mail the telegram. I had a death
in my family at the time. I was at the postoffice, and, really, there were
two telegrams sent. I did not know it at the time, and really did not
think about it—whether it was going to Miss Smith in Georgia, and
when Mr. Hamilton asked me the question, and I guess I got it right,
and he asked me what he should do, and I told him to 'mail it,' thinking
it was to the one in Georgia." It was material for defendant to show
that he did know which telegram Hamilton meant when he asked about
the extra charge, and the excluded part of the statement further tended
to show not only that he refused to pay the charge, but why he refused
to pay it, because "he sent the message to Smith as a matter of respect
and did not expect him to attend the funreal," and, therefore, thought
that mailing the telegram would answer as well as a quicker delivery.
The evidence excluded really showed the contradiction in an intensive
form.

It was the duty of the defendant, when it learned that the sendee lived
"out of town," to inform the sender of the fact and demand payment, or
a satisfactory guarantee, of the charge for the extra service, as it elected.
The *Chief Justice* said, in *Bryan v. Tel. Co.,* 133 N. C., at pp. 605, 606:
"The defendant could have sent the message on to the plaintiff, collect-
ing the charge for the special delivery from her, or, if not willing to
risk it, it was negligence not to wire back to Mooresville and demand
payment or a guarantee of the cost of delivery beyond the free-delivery
limits." And again: "If guarantee of payment of the special delivery
(charge) had been asked and refused, there was no compulsion on the
defendant to deliver beyond the free-delivery limits." We fully recog-
nized, in the following cases, the right of the company, when it discovers
that the sendee lives beyond its free-delivery limits, to collect in advance
the charge for the extra service required in making a special delivery.
*Bryan v. Tel. Co., supra; Hood v. Tel. Co.,* 135 N. C., 622; *Bright v.
Tel. Co.,* 132 N. C., 317. In the *Gainey case,* 136 N. C., 265, we quoted
with approval what was said by the *Chief Justice* in *Bryan v. Tel. Co.,
supra:* "The officer at the receiving point could not have given the sender
any information which he did not already have. It was his own negli-
gence not to have paid the special delivery charges, if such a delivery was
required," citing *Tel. Co. v. Henderson,* 89 Ala., 510; *Tel. Co. v. Mat-
thews,* 107 Ky., 663; *Tel. Co. v. Taylor,* 3 Texas Civ. App., 310; *Tel. Co.
v. Swearingen,* 95 Texas, 420.

The case of *Tel. Co. v. Taylor, supra,* which has been generally followed by the courts, and which has been approved by this Court, held that where the rules of the company restrict its free-delivery limits to the radius of a given distance, in that case one-half mile of its office, it is not legally bound (the special delivery charge not having been paid or arranged) to deliver a message to the addressee at his residence in the country, 3 miles from the said office. The rule as to delivery limits is a reasonable one, and we have held that it must be complied with, when brought to the attention of the sender, by the prepayment of or some agreement in regard to the special delivery charges.

Some courts have held, in well considered opinions, notably *Tel. Co. v. Henderson,* 89 Ala., 510, that the sender, if the blank on which he writes his message informs him that there are free-delivery limits, must take notice of the fact, and is presumed to have sent the message with the understanding that the sendee resides within them, unless he has provided, in some way satisfactory to the company and in advance, for the payment of the extra toll for a special delivery, if the sendee lives beyond the free-delivery limits. But we have not gone so far, and deem our rule the more reasonable one, viz., that the company should notify the sender by a service message, if the message cannot be delivered within the limits prescribed for the place to which it is addressed, so that he may furnish a better address, or, if the addressee lives beyond the said limits, provide for the payment of the charge for the extra service required. *Hendricks v. Tel. Co.,* 126 N. C., 310. We so held in *Gainey v. Tel. Co., supra,* where it was said: "We have held that when a message is received at a terminal office to which it has been transmitted for delivery to the person addressed, it is the duty of the company to make diligent search to find him, and, if he cannot be found, to wire back to the office from which the message came for a better address; and likewise it is the duty of the company, when it has discovered that the person for whom the message is intended lives beyond its free-delivery limits, either to deliver it by a special messenger or to wire back and demand payment, or a satisfactory guarantee of payment, as it may choose to do, of the charge for the special delivery, and if it fails to deliver without demanding and being refused payment of the charge, it will be liable for its default. It is not liable, though, if the sender of the message, when proper demand is made, refuses to pay the extra charge for a special delivery beyond the limits established for free delivery by the company, provided those limits are reasonable," citing *Hendricks v. Tel. Co., supra,* and 78 Am. St. Rep., 658; *Bryan v. Tel. Co., supra,* and *Tel. Co. v. Moore,* 12 Ind. App., 136 (54 Am. St. Rep., 515). This rule is fair to the sender, who may not take special notice of the free-delivery regulation at the time,

as a very few read what is printed on the back of the blanks, or who may not know where the addressee resides; and it is also fair to the company, as it is thus enabled to perform its full duty with proper compensation. It seems to us that it would be exceedingly inconvenient, if not unfair, to the public should we take any other view of the matter.

But this only shows how important it was that all the facts regarding the guarantee of the charge for the extra service should have been laid before the jury, and it would appear, in this case, that the denial of the right to have this done greatly prejudiced the defendant, as the written statement squarely contradicted Freeman's testimony in every material respect, so far as it concerned this question, which was the paramount one in the case.

Mental anguish affords a proper basis for the assessment of damages in telegraph cases, irrespective of physical injury, as this Court held as far back as *Young v. Tel. Co.,* 107 N. C., 370, and *Thompson v. Tel. Co.,* 107 N. C., 449; but that means genuine and not unreal anguish, and juries should be careful, if not astute, to distinguish between the two. It is necessary, therefore, that they should have all the light possible in order that they may detect that which is spurious, and compensate only that which is real, as it is so easy to be simulated.

For the error indicated, another trial is ordered.

New trial.